OPINION OF THE COURT
Bonnie Wittner, J.
On January 6, 1997, defendant Andrew Brown and five others were indicted for criminal sale of a firearm in the first and second degrees and multiple counts of both criminal sale of a firearm in the third degree and criminal possession of a weapon *280 in the third degree. That indictment contained 52 counts against Andrew Brown. On May 11, 1998, defendant was arraigned on a superseding indictment charging him with conspiracy in the fourth degree along with all crimes originally charged in the initial indictment. By that date, all codefendants in the first indictment had disposed of the charges against them and were named as coconspirators on the superseding indictment. The case was tried to a jury from October 5 through October 28, 1998.
The evidence at trial showed that the charges arose out of a long-term investigation into gun trafficking in New York City. As part of this investigation, an undercover officer (uc) negotiated and purchased 46 guns, together with ammunition, over an eight-month period from April 1996 through December 18, 1996. In four transactions between November 7 and December 18, this officer purchased 15 guns directly from Brown. The remaining 31 guns were sold to him by the other coconspirators in 12 separate transactions from April through September 1996.
The jury convicted defendant of criminal sale of a firearm in the first degree (1 count), criminal sale of a firearm in the second degree (1 count), criminal sale of a firearm in the third degree (2 counts), criminal possession of a weapon in the third degree (not in home or place of business) (12 counts), criminal possession of a weapon in the third degree (defaced) (7 counts) and conspiracy in the fourth degree (1 count). He now moves pursuant to CPL 330.30 to set aside the verdict of guilty on the two counts — criminal sale of a firearm in the first and second degrees (Penal Law §§ 265.13, 265.12) — on the ground that the People failed to make a prima facie showing that defendant committed either of those crimes.
THE STATUTES
Penal Law § 265.13 provides:
“A person is guilty of a criminal sale of a firearm in the first degree when he unlawfully sells, exchanges, gives or disposes of to another twenty or more firearms.
“Criminal sale of a firearm in the first degree is a class C felony.” (As added by L 1991, ch 496, § 3.)
Penal Law § 265.12 provides:
“A person is guilty of a criminal sale of a firearm in the second degree when he unlawfully sells, exchanges, gives or disposes of to another ten or more firearms.
*281 “Criminal sale of a firearm in the second degree is a class D felony.” (As amended by L 1991, ch 496, § 2.)
defendant’s argument
Defendant argues that the statutes require the physical transfer of at least 10 or 20 firearms in one transaction. Since there was no evidence that more than five guns were sold by defendant at any one time, he concludes that a prima facie case of the commission of either Penal Law § 265.13 or § 265.12 was not established and the convictions must be vacated. Further, he claims that, even if sales on separate dates could be aggregated, there was no evidence to support his conviction for the sale in the first degree because he only sold 15 guns directly to the uc. Moreover, he argues that, even if aggregation was theoretically permissible, here it was improper because neither the indictment nor the charge particularized which “20” guns this defendant was responsible for selling.
people’s argument
The People argue that the statutes “do not state or imply in any way” that the sale of 10 or 20 firearms must be at one time or in one place. (Mem of law in opposition to defendant’s motion to set aside verdict, at 4 [Mem. In Opp.].) They also rely on “the. State’s strong policy to severely restrict possession of any firearm.” (People v Powell, 54 NY2d 524 [1981], cited in Mem. In Opp., at 5.) In addition, they rely on the fact that separate takings from the same owner and from the same place may constitute a single larceny under certain circumstances. These circumstances are, of course, that the takings be “pursuant to a single intent and design and in execution of a common fraudulent scheme.” (People v Cox, 286 NY 137, 141 [1941].) Finally, the People claim that proof of sale of 10 or 20 particular guns is not an element of these crimes and, therefore, it is of no legal significance that the jury was not charged that it must agree on which specific 20 guns were sold in order to convict for sale of a firearm in the first degree.
DISCUSSION
1. Plain Language of the Statutes
The statutes’ plain language refers to the “sale or other disposition” of 10 or 20 firearms, respectively, supporting the view that all must be physically transferred from seller to buyer at the same time. The statutes do not expand the definition of *282 sale to an offer or agreement to sell in the future. In contrast, in the narcotics context, Penal Law § 220.00 (1) specifically defines to sell as “to sell, exchange, give or dispose of to another, or to offer or agree to do the same” (Emphasis supplied.) Thus, when the Legislature wished to include an offer or agreement within the definition of sale, it did so explicitly. Agreements and offers to sell were not included in the weapons context even though article 265 has been amended numerous times. The Legislature apparently did not intend to change the definition of sale in that article.
2. Legislative History
The legislative history of the firearms sale statutes supports this conclusion. In 1991, section 265.13 was added to the Penal Law and section 265.12 was amended to change criminal sale of a firearm in the first degree to criminal sale of a firearm in the second degree and to lower the threshold from 20 or more to sale of 10 or more firearms. (Section 265.12 had first been added to the Penal Law in 1980; L 1980, ch 233, § 12.) The Memorandum submitted by the New York State Assembly in support of the legislation explained the justification for the bill: “Law enforcement officials report that big-time illegal traffickers in firearms transport these weapons into New York State in amounts exceeding twenty firearms per trip, while the more occasional traffickers transport quantities in the range of ten to twenty per trip. By increasing the penalties and lowering the thresholds for existing crimes of criminal sale of a firearm, and adding a new C felony for trafficking in twenty or more firearms this bill would take steps toward curtailing the deadly trade in illegal firearms” (Mem of Assembly in support of L 1991, ch 496, 1991 NY Legis Ann, at 272 [emphasis supplied]).
Similarly, the Memorandum submitted by the Legislative Representative of New York City in support of the same bill explained that currently:
“a person convicted of the unlawful sale of up to nineteen firearms could be sentenced to a definite term of less than one ycm* ^
“[t]his bill will aid law enforcement, which often seizes smaller quantities of firearms from criminals, seeking to avoid the present threshold requirement of twenty or more guns * * * [u]nder this bill, the average seizure of twelve to seventeen guns constitutes Criminal Sale of a Firearm in [the] second degree, a D felony. Twenty or more * * * would constitute Criminal Sale of Firearms in the first degree, a C felony. *283 All seizures up to ten guns would constitute Criminal Sale of a Firearm in the third degree, an E felony.” (1991 McKinney’s Session Laws of NY, at 2061.)
Both Memoranda clearly refer to sales of firearms on one occasion, either “per trip” or “per seizure”, as the conduct proscribed by the statutes. Moreover, if firearms seized at more than one time could be aggregated, the amendment lowering the threshold to 10 would not have been necessary in order to increase penalties for those selling under 20 at a time. Two or more sales of 10 or more could be aggregated to establish a violation of sale in the first degree.
Legislation currently awaiting the Governor’s signature would increase penalties for the sale of firearms by increasing the grade of penalty for each current crime involving the sale. Thus, sale in the first degree would become a B violent felony, sale in the second degree would become a C violent felony and sale in the third, a D violent felony. (See, 1997 NY Assembly Bill A 6246.)
3. Case Law
As both sides note, there are no reported decisions interpreting these two statutes. The People attempt to analogize to certain kinds of larceny in which “aggregation” is permitted. They misapply the concept to this case.
In its simplest form, aggregation allows the prosecutor to consolidate in one count the value of all money or property taken from a single victim pursuant to a common scheme or plan with one larcenous intent. (People v Cox, 286 NY 137 [1941], supra.) It is based on common-law concepts of larceny (see, People v Cox, supra), as well as the statutory definitions set forth in Penal Law article 155, such as larceny by false pretense or embezzlement (§ 155.05 [2] [a]) or by false promise (§ 155.05 [2] [d]). However, even in larceny cases, aggregation is not permitted where there are separate takings from different victims or owners (see, e.g., People v Perlstein, 97 AD2d 482 [2d Dept 1983]) or there was no unitary scheme to defraud (see, e.g., People v Bornstein, 96 AD2d 722 [4th Dept 1983]). The People cite no case applying the aggregation theory other than in allowing aggregation of monetary amounts to meet larceny or stolen property threshold amounts.
The reference to People v Martin (153 AD2d 807 [1st Dept 1989], Iv denied 74 NY2d 950) is baffling since that case held that a defendant could not be convicted for two counts of possession with intent to sell (Penal Law § 220.16) merely because *284 he had both heroin and cocaine on him when arrested. Weight of the narcotics was neither an issue in the case nor an element of the charge (Penal Law § 220.16). In fact, the law does not permit aggregation of separate seizures of narcotics from the same defendant to meet threshold weight requirements.
Finally, the cases cited by the People regarding the failure of the indictment to specify the guns which underlie the sale in the first degree count are inapposite. Here, an element of that charge is that defendant sold 20 firearms. In other words, assuming arguendo, aggregation is permissible, the record here does not specify which 20 guns defendant, “acting in concert” with the codefendants, sold. At best, it shows defendant may have been the source of some of the 31 guns sold by the others. Records, which the United States Bureau of Alcohol, Tobacco and Firearms requires firearms dealers to keep, showed that the last legitimate sales of 10 of those 31 guns were in the Lynchburg, Virginia, area. When arrested, defendant had identification listing Lynchburg as his residence, and telephone records introduced at trial indicated that he had made calls to the undercover from a phone located in Lynchburg. The 31 guns sold to the undercover were pleaded only as “overt acts” in the conspiracy charge. The conspiracy conviction shows only that the jury unanimously agreed that at least one overt act was committed by defendant or one of the coconspirators. There was no evidence at trial that more than five guns were physically transferred to the undercover on any one date, although in many conversations between the uc and Brown, Brown indicated he could supply more than 10 guns.
He is, of course, entitled to know which 20 guns he is charged with selling under the sale in the first degree count. In the absence of such specificity, he cannot defend against the charges and there is no way to know if the jurors agreed that he sold the requisite number of guns. Put simply, five jurors may have agreed that he sold the first 20 guns, three other jurors may have voted that he sold the last 20 guns and still other jurors may have agreed on some guns from each of the 12 transactions. Thus, the verdict does not reflect an agreement by 12 jurors that defendant sold the same 20 firearms. (See, People v Keindl, 68 NY2d 410, 418 [1986] [acts which separately and individually make out distinct crimes must be charged in separate counts, otherwise “individual jurors might vote to convict a defendant of that count on the basis of different offenses; the defendant would thus stand convicted under that count even though the jury may never have reached a *285 unanimous verdict as to any one of the offenses”].) Thus, even if aggregation was permitted, the conviction for sale in the first degree would have to be set aside because the guns were not particularized in the indictment.
CONCLUSION
The motion to set aside the verdicts on counts 1 and 2, criminal sale of a firearm in the first and second degrees, is granted. The decision to set aside these verdicts does not give approval to those who traffic in firearms. To the contrary, it is merely a narrow holding that, as a matter law, pursuant to CPL 330.30 (1), there was insufficient evidence on the record here to support the convictions. I agree with the People that the Legislature’s paramount concern in enacting the increasingly harsh penalties and lowering the threshold requirements for imposition of those penalties was “curtailing the deadly trade in illegal firearms.” (Mem of Assembly, op. cit., 1991 NY Legis Ann, at 272.) In fact, I urge the Legislature not only to lower the threshold of sale in the first degree to 15 guns but to elevate it to a B violent felony offense (VFO) and similarly lower the threshold for sale in the second degree to five or more and make it a C VFO.* Finally, the scope of sentence I may impose on this defendant, who himself sold and possessed 15 loaded and operable guns on four separate occasions, is sufficient to send the clear and unequivocal message that trafficking in illegal weapons cannot be tolerated.

 This proposal is consistent with current Penal Law § 265.02 (4) which makes possession of a loaded and operable weapon, not in the home or place of business, a D VFO. Surely the sale of one or more — whether loaded or not — should be made a D VFO and the sale of five or more should at least be aC VFO.