THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* CHARLES E. COX, Appellant.

138

Argued June 12, 1941; decided July 29, 1941.

*John C. McDermott* for appellant. Two or more petit larcenies cannot be added together so as to sustain the charge of grand larceny. (*Carl* v. *State*, 125 Ala. 89; *People* v. *Dillon*, 1 Cal. App. [2d] 224; *Trask* v. *People*, 35 Col. 83; *Monoughan* v. *People*, 24 Ill. 340; *Joslyn* v. *State*, 128 Ind. 160; *State* v. *Hall*, 111 Kan. 458; *Nichols* v. *Commonwealth*, 78 Ky. 180; *People* v. *Johnson*, 81 Mich. 573; *Patterson* v. *State*, 171 Miss. 1; *State* v. *Maggard*, 160 Mo. 469; *Matter of Jones*, 46 Mont. 122; *State* v. *Mandich*, 24 Nev. 336; *State* v. *Martin*, 82 N. C. 672; *Camp* v. *State*,

7 Okla. Cr. 531; *State* v. *Ayoub*, 111 S. C. 331; *Wilson* v. *State*, 70 Tex. Cr. 631; *West* v. *Commonwealth*, 125 Va. 774 *King* v. *Petrie*, 1 Leach C. C. 294.)

*Thomas E. Dewey*, District Attorney (*Stanley H. Fuld* of counsel), for respondent. The defendant's guilt of crimes of grand larceny was established beyond a reasonable doubt. (*Willis* v. *State*, 134 Ala. 429; *People* v. *Fleming*, 220 Cal. 601; *Craig* v. *State*, 95 Fla. 374; *Norman* v. *State*, 44 Ga. App. 92; *State* v. *Peters*, 43 Ida. 564; *People* v. *Heilemann*, 262 Ill. 322; *Peters* v. *State*, 191 Ind. 130; *State* v. *Hall*, 111 Kan. 458; *Weaver* v. *Comm.*, 27 Ky. L. 743; *Dodson* v. *State*, 130 Miss. 137; *State* v. *Shour*, 196 Mo. 202; *Regina* v. *Bleasdale*, 2 Carr. & K. 765; *Regina* v. *Firth*, 11 Cox Cr. Cas. 234; *Regina* v. *Henwood*, 22 Law Times Rep. 486.)

FINCH, J. Defendant was convicted in the Court of General Sessions of the county of New York of the crimes of grand larceny in the first degree and of grand larceny in the second degree, after a trial before the court and jury. The Appellate Division unanimously affirmed the judgment.

The case is one of a series brought against a number of employees of the Independent Subway System who have been engaged for years in stealing nickel fares deposited by subway passengers in the station turnstiles. The taking generally was of 500 or 600 fares, amounting to $25 or $30. To accomplish the theft joint action was required of the station agent and the maintainer. Both would decide first upon the number of fares to be taken on the respective occasion. The maintainer would then turn back the turn-stile register which automatically recorded the nickels deposited, so as to have it appear that fewer passengers had gone through the turnstile. The station agent would then make his report agree with the amount that the register had been set back by the maintainer, and the difference would be divided between them.

Defendant Cox, a turnstile maintainer, was convicted of two crimes of grand larceny, each involving action in concert

with a particular station agent. The first larceny involved approximately $1,500 over a period of eleven months committed in concert with station agent Harry Grower, and the second larceny, the theft of more than $370 in ten months in co-operation with station agent Isidore Kodisow. Defendant cannot dispute with any hope of success the fact that the record establishes his guilt of theft.

By way of defense defendant urges that, since the takings occurred over a period of time and at no one time exceeded the sum of $100, he was guilty only of a number of petty larcenies rather than of grand larceny. Petty larceny is defined in brief as the theft of less than $100, while grand larceny consists of the theft of more than $100.

Upon this record there is more than ample proof to show that defendant, over a period of years, stole thousands of dollars in nickels from the Independent Subway System of the City of New York. Direct and unequivocal evidence of the misappropriations was furnished by those who acted in concert with defendant in stealing the nickels. Thus six witnesses testified to the " belting " of the turnstile registers and the forging of the daily official reports, together with the execution in detail of the scheme, the frequency of the thefts and the amount of the various takings. Ample corroborative evidence was furnished by the police officers of the Subway System. Officer Callahan testified that he had observed defendant on May 1, 1937, at the Fourteenth Street subway station, while Kodisow was on duty, tampering with the turnstile register, removing the register's cover and placing his hands in the register. In addition, defendant not only specifically admitted that he had been working with Kodisow at the Fourteenth Street station, but also made numerous admissions to both Officers Callahan and Cody concerning his complicity generally in the stealing scheme. Also the police officers testified that the defendant had paid gratuities to them and had attempted to bribe them. There was evidence too that defendant maintained a safe deposit box under a fictitious name; that he had several bank accounts under other names than his own;

that in one of them he had deposited $7,000 over the course of two years; that he made large bets frequently at horse races, and that generally he had been living far beyond his salary of $31 a week. Although the second count charged a theft occurring over a two and one-half year period, the judge limited the issues by instructing the jury to consider only the money stolen between July, 1936, and June, 1937, amounting to approximately $1,300 in concert with Grower at the Chambers Street station in Manhattan. Also, under the fourth count, charging a larceny over a three-year period, the judge confined the jury to consideration of the money stolen, amounting to approximately $370, from November, 1936, to September, 1937, in concert with Kodisow at the Fourteenth Street station in Manhattan. The total in each instance was made up by aggregating the takings at different times, each taking consisting of approximately 500 to 600 nickels.

The question raised has apparently never been squarely presented in this State, although it has been passed upon in at least twenty-five of the other States and in England. In the great majority of those jurisdictions the law is settled that where property is stolen from the same owner and from the same place in a series of acts, those acts constitute a single larceny regardless of the time elapsing between them, if the successive takings be pursuant to a single intent and design and in execution of a common fraudulent scheme. In accordance with the law as so far settled, the trial court instructed the jury that defendant could be convicted of grand larceny only if his takings were motivated by " a single and sustained criminal impulse and in execution of a general fraudulent scheme." Accordingly this finding of fact by the jury is conclusive in this court.

The case at bar would not seem to differ from that where a plan was laid to steal all the furnishings of an unoccupied house. The thief arranged with a truckman that whenever he called him they would go together to the unoccupied house and remove a truckload of furnishings. In the meantime the house is kept locked so as to protect it from other

marauders. Even if it took a long period of time and many truckloads of furnishings to empty the house, surely no one would contend seriously that defendant could not be convicted of the single crime of stealing articles of the total value of the furnishings of the house. To that end defendant arranged with the truckman for the crime, and the different trips were but incidents under the general intent and the one illegal plan. Likewise in the case at bar defendant arranged with the station agent so that all the takings were pursuant to one single intent, and the stealings on the separate days, like the takings by means of the various truckloads, were but incidents in carrying out the general plan. There is sufficient evidence in the record to justify the finding of the jury that, after the scheme had been formulated by defendant and the particular station agent, only the number of fares taken on one particular visit was left undetermined as an incident of the general plan. As long as the larceny is held to be pursuant to a single intent, and one complete, illegal scheme, it matters not the length of the period over which the takings continued. Thus successive takings lasting for about a period of three years (see *State* v. *Peters*, 43 Idaho, 564; *State* v. *Wetzel*, 75 W. Va. 7); or for a period of about two years (*Willis* v. *State*, 134 Ala. 429; *State* v. *Kurth*, 105 Mont. 260) have been held to constitute a single larceny. If several takings are pursuant to several different intents and each illegal plan is a new and separate enterprise, each taking may only be prosecuted as a single larceny, for it is only those stealings which are prompted by a single intent and pursuant to a single plan which may be accumulated and prosecuted as one larceny. The principle of law involved has been stated as follows: " Where the property is stolen from the same owner and from the same place by a series of acts, if each taking is the result of a separate, independent impulse, each is a separate crime; but if the successive takings are all pursuant to a single, sustained, criminal impulse and in execution of a general fraudulent scheme, they together constitute a single larceny, regardless of the

time which may elapse between each act." (36 Corpus Juris, p. 798.)

The courts which have dealt with this subject have applied the above principle indiscriminately to both common law and statutory larceny. The same rule applies in England, where in a prosecution for common law theft the court said: " Had there been evidence of distinct takings it would have made no difference, for the case would then have been similar to the taking of coal at different times in a mine (*Rex* v. *Bleasdale*, 2 Carr. & K. 765), and the case of cutting trees at such times as to form one continuous taking (*Reg.* v. *Shepherd*, 37 L. J. 45, M. C.; 11 Cox Crim. Cas. 110), and to the case of taking gas for a long time in succession (*Reg.* v. *Firth*, 11 Cox Crim. Cas. 234). The conviction, therefore, must be affirmed." (*Regina* v. *Henwood*, 22 Law Times Rep. 486.)

There is evidence sufficient in the case at bar to sustain the verdict of the jury that the entire taking was governed by a single intent and a general illegal design. This total sum stolen by defendant and his co-conspirators under the two counts of the indictment was stolen pursuant to this general fraudulent design which was created before the misappropriations began and continued throughout the entire period. If the jury did not find such to be the fact, they were instructed to acquit the defendant. It is submitted that the record supports the above finding of the jury rather than that here were a number of isolated transactions or distinct larcenies coincident solely in method, place or time. That here was a common plan and scheme is shown by the invitation of defendant to the station agent to work in co-operation with him and to split the proceeds whenever and at whatever station the two worked together. Other acts and utterances of defendant indicate the singleness of the intent and the oneness of the fraudulent scheme. The reference by defendant to his takings as " this racket," his request to one of the station agents that he " play ball," the advice of defendant to an accomplice that a safe deposit box should be obtained in which to keep the stolen nickels,

his statement to a confederate expressing a belief in a safe
and profitable career for himself " at the time when he
would leave the service they would call him ' Mr. Cox,' "
the repeated admonitions to various confederates cautioning
them against carelessness, together with the increased scale
of living by defendant after the thefts began, all point to
the conclusion that defendant himself regarded the taking
as a continuing transaction and not as single or isolated.
Here there was a continuing larceny by a thief operating
under a single purpose to carry out a general fraudulent
plan. We have first the formulation of a plan for syste-
mized thievery, then the adoption of the plan by persons
able to make it effective, and lastly its subsequent realiza-
tion, together with the taking of the necessary steps to
preserve a continuing operation unmolested. When defend-
ant, along with the various station agents, once agreed
together to " belt " the turnstiles, and thereafter carried
out that purpose by stealing the nickels, the acts necessary
to constitute the offense of larceny were united and the
resulting crime was single although there may have been a
number of takings. Indeed, the various takings represent
" the act constituting the crime." (Code Crim. Proc.
§ 275.) While the court under each of the counts limited
the taking to a single subway station, with a single con-
federate, evidence of other takings by defendant, acting in
concert with other agents, was proper. The seventh count
of the indictment charged that defendant and nineteen
named station agents, with others unknown, conspired
together to commit thefts from the Subway System   To
establish the conspiracy it was proper and necessary for
the People to show that defendant had acted in concert
with his co-conspirators and that each of them, acting
together, had been guilty of stealing fares in addition to
those referred to in the second and fourth counts in the
indictment. In the second place, such evidence was prop-
erly received to show the existence of a common plan and
scheme.

The evidence relied upon by the defendant as proof that no common scheme or plan existed was the testimony of the witness Kirshen that the maintainers never knew in advance at which station they were going to work. Such testimony did not destroy the plan but merely limited its operation to whenever and wherever the opportunity to further the plan presented itself.

Logic and reason join with all the authorities that have considered the question, in holding that the People may prosecute for a single crime a defendant who, pursuant to a single intent and one general fraudulent plan, steals in the aggregate as a felon and not as a petty thief. If this were not so, a crime of grand larceny would go unpunished and a felon escape because the law classified him only as a petty thief.

It follows that the judgment should be affirmed. (See 286 N. Y. 706.)

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, LEWIS, CONWAY and DESMOND, JJ., concur.

Judgment affirmed.