◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DERRICK MCCARTHY, Appellant. [740 NYS2d 381] —Appeal by the defendant from a judgment of the Supreme Court, Queens

County (Demakos, J.), rendered July 15, 1999, as amended December 2, 1999, convicting him of murder in the second degree (two counts), attempted robbery in the first degree (two counts), criminal possession of a weapon in the second degree, and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment, as amended, is affirmed.

The legal sufficiency of evidence is established if, " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' " (*People v Contes,* 60 NY2d 620, 621, quoting *Jackson v Virginia,* 443 US 307, 319). For the charge of depraved indifference murder, the evidence must show "recklessness plus aggravating circumstances" (*People v Register,* 60 NY2d 270, 278). In this case, the victim, George Spencer, was standing by his car, confronting Maurice Gittens, who was attempting to steal the car's radio. The defendant, who accompanied Gittens, engaged in a gun battle with Spencer while running down the street, thereby exposing bystanders to the risk of harm. In the course of the gun battle, the defendant shot Spencer in the face, causing his death, and fled the scene. These facts indicate that the defendant acted with depraved indifference to human life in causing Spencer's death (*see People v Ficaro,* 233 AD2d 460; *People v Waugh,* 189 AD2d 907; *People v Languena,* 129 AD2d 587).

There was also legally sufficient evidence to support the defendant's conviction of felony murder predicated on the attempted robbery of Spencer's car radio (*see People v Rivera,* 159 AD2d 255; *People v Sampson,* 145 AD2d 910; *People v Santiago,* 62 AD2d 572, 575-580; *but see People v Fields,* 232 AD2d 501). The defendant contends that the People's witness, Peter Blake, who provided the only evidence that the defendant was taking part in the attempted robbery, was not credible. However, resolution of issues of credibility, as well as the weight to be accorded to the evidence presented, are primarily questions to be determined by the jury, which saw and heard the witnesses (*see People v Gaimari,* 176 NY 84, 94). Its determination is entitled to great weight on appeal and should not be disturbed unless clearly unsupported by the record (*see People v Garafolo,* 44 AD2d 86, 88).

Evidence of uncharged crimes is not admissible if offered only to raise an inference that a defendant is of a criminal disposition (*see People v Hudy,* 73 NY2d 40, 54-55). While the trial court should have held a *Ventimiglia* hearing and issued a limiting instruction (*see People v Ventimiglia,* 52 NY2d 350,

361-362; *People v Williams,* 50 NY2d 996, 998), the testimony of nonaccomplice witnesses provided overwhelming corroboration of the testimony of the defendant's accomplice, and therefore, any error was harmless (*see People v Jones,* 85 NY2d 823; *People v Daniels,* 37 NY2d 624, 630; *People v Lane,* 10 NY2d 347; *People v Jones,* 289 AD2d 257; *People v Nichilo,* 274 AD2d 592; *People v Medina,* 265 AD2d 429; *People v Schrader,* 251 AD2d 1032, 1033; *People v Codner,* 134 AD2d 272).

The sentence imposed was not excessive (*see People v Delgado,* 80 NY2d 780; *People v Suitte,* 90 AD2d 80).

The defendant's remaining contentions are without merit. Santucci, J.P., Feuerstein and Schmidt, JJ., concur.

Goldstein, J., dissents and votes to reverse the judgment, as amended, on the law, and grant a new trial, with the following memorandum: On November 30, 1981, the victim was shot and killed after he confronted a thief in the vicinity of his car. Maurice Gittens, an admitted car thief, testified at the trial that he drove the defendant to the scene, so the defendant could go to a marijuana store referred to as "Star Wars." Gittens saw the victim's car up the block, and decided to steal its radio. The victim interrupted him, and a struggle ensued. The victim reached for his ankle, to pull a gun out of his ankle holster. The defendant, whom Gittens testified was not a car thief and not a participant in Gittens's attempt to steal the car radio, approached with a gun. At that point, Gittens fled, and heard gunshots.

The victim shot the defendant in the foot, and the defendant shot the victim in the face. The victim died from his injuries. The bullet that killed the victim came from either a .38 caliber or nine-millimeter automatic weapon.

Five years later, in 1986, the defendant allegedly described his participation in the crime to his childhood friend and longtime criminal associate, Peter Blake. Blake became a government informant after he was sentenced to 50 years' imprisonment for an unrelated federal conviction. According to Blake, the defendant claimed that he was stealing the victim's car in order to drive to Long Island to commit a burglary. When the victim approached, the defendant walked away. The victim followed the defendant, firing gunshots. The defendant returned the fire.

These sharply divergent versions of the crime were presented to the jury at the trial. Gittens's version of the events was supported by three other witnesses who testified that the man who shot the victim was standing outside of and away from the victim's car. None of these witnesses were able to identify the defendant as the man who shot the victim.

The jury apparently credited the version of the crime set forth in Blake's testimony, since, by its verdict, it necessarily found, contrary to Gittens's testimony, that the defendant was a participant in the crimes of attempted robbery in the first degree, and felony murder.

At the trial, extensive evidence of uncharged crimes was erroneously admitted. Prior to the trial, the People moved for an order permitting them to introduce evidence of uncharged crimes to establish that there was a relationship of trust between the defendant and his witnesses. The court, in a written decision, granted the application without a hearing, on the ground that the evidence "will explain to the jury the depth of the relationship between the defendant and the witnesses, their mutual trust for each other and why the defendant believed he could confide in each of them."

Prior to jury selection, the defense counsel asked the court for a *Ventimiglia* hearing, so the court could rule on "each one of the criminal allegations." The court held that *People v Ventimiglia* (52 NY2d 350, 362) did not apply to this situation, and declined to conduct a hearing.

During the trial, the defense counsel noted that he had just received information as to the nature of the uncharged crimes which the People intended to introduce during their direct examination of Blake. The defendant objected to any evidence of uncharged crimes occurring after the defendant allegedly admitted his complicity in the instant offense to Blake in 1986, on the ground that any criminal conduct occurring after the defendant's alleged admission in 1986 was irrelevant to the defendant's state of mind when he allegedly made the admission. The court replied that its prior ruling was not limited "as to before or after" the defendant's admission to Blake. The defense counsel asked the court, "in light of your ruling, what is the limiting instruction? When are you going to give a limiting instruction?" The court replied, "certainly it is not going to be immediately after the testimony. In all probability it will be during the final charge to the jury."

Blake testified to a longterm friendship and criminal association with the defendant, dating back to their preteenage and teenage years in Kingston, Jamaica, when the defendant and Blake burglarized houses together. Blake noted that the defendant was also friends with one Marvely, who was a car thief. During the 1970's, while Blake and the defendant were in jail together in Jamaica, the defendant confided that he had shot a prison guard.

In 1986, Blake encountered the defendant again when they

were both living in Dallas, Texas. According to Blake, the defendant was dealing in marijuana and Blake was dealing in crack cocaine. Blake brought the defendant into his crack cocaine business. Blake asked the defendant how he ended up in Dallas, Texas, whereupon the defendant allegedly confessed to the instant crime.

None of this evidence of uncharged crimes should have been admitted without a *Ventimiglia* hearing. Although some of the evidence of uncharged crimes was relevant to the issue of why the defendant would confide in Blake that he was involved in a homicide, and had successfully avoided prosecution, the defendant's prior association with a car thief was not probative and highly prejudicial.

Blake further testified, over objection, that he and the defendant were involved in the sale of 30 kilograms of cocaine per month. His operation bought the cocaine in California for $14,250 per kilogram, and sold it for between $60,000 and $65,000 per kilogram. The defendant and Blake were in the cocaine business together from 1986 until 1990. On cross-examination, Blake candidly acknowledged that he did not know whether they started dealing 30 kilograms of cocaine per month as early as 1986. He stated "I don't know what year it started, but I know it was going on." Sometime between 1986 and 1990, Blake was present when the defendant directed the murder of an individual whom Blake referred to as "Stone."

Clearly, evidence of uncharged crimes occurring after the defendant's alleged admission to Blake in 1986 was irrelevant (*see People v Bell,* 217 AD2d 585, 586). That evidence, which consisted of an uncharged murder, and extensive drug trafficking, was highly prejudicial.

The defense counsel moved for a mistrial, based, in part, on the admission of "voluminous evidence" of the large-scale cocaine dealing engaged in by Blake and the defendant, and evidence that the defendant directed a murder in Texas after his statement to Blake was made, asserting that all uncharged crimes occurring after the defendant's alleged admission to Blake in 1986 were irrelevant. The court denied the application. Thereafter, Blake testified, over objection, that while in Jamaica, the defendant carried an automatic .38 caliber Smith & Wesson revolver, and in 1986, he carried a Baretta nine-millimeter weapon.

The defendant's accomplice, Maurice Gittens, testified over objection that, prior to the day of the instant crime, he had seen the defendant with "other nine millimeters on previous occasions," and that the defendant "liked Barettas." The court

also allowed testimony that Gittens presumed that the defendant ran the marijuana store named "Star Wars."

In its final instructions to the jury, the court issued a limiting instruction with respect to Blake's testimony regarding uncharged crimes. The defendant's request for a limiting instruction with respect to the accomplice Gittens' testimony with respect to uncharged crimes was denied.

My colleagues in the majority acknowledge that the court erred in failing to conduct a *Ventimiglia* hearing. Failure to make a pretrial ruling as to the admissibility of each uncharged crime need not, standing alone, constitute reversible error (*see People v Civitello,* 152 AD2d 812, 813-814). However, in the instant case, the court abdicated its responsibility to rule on the admissibility of each uncharged crime, by failing to weigh its probative worth against its prejudicial effect (*see, People v Alvino,* 71 NY2d 233, 242; *People v Martinez,* 253 AD2d 775, 776). Evidence of uncharged crimes was admitted here without a ruling as to when the crime occurred or how it was relevant to the issue of the defendant's guilt.

The testimony that the defendant habitually carried a .38 caliber Smith and Wesson revolver in Jamaica, years before the crime occurred, carried a nine-millimeter Baretta weapon on occasions prior to November 30, 1981, when the crime occurred, and was still carrying a nine-millimeter Baretta weapon in 1986, demonstrated the defendant's propensity to commit the crime of criminal possession of a weapon. Such evidence was not probative of the defendant's identity as the perpetrator. Indeed, Gittens acknowledged that he saw "other nine millimeters," not the same gun, on prior occasions, and no evidence indicated that the victim was shot with a Baretta.

When admitting evidence of uncharged crimes, a trial court should issue limiting instructions when the evidence is admitted and again at the end of the case (*see People v Williams,* 50 NY2d 996, 998). In the instant case, the court gave limiting instructions only in its final charge, and refused to deliver any limiting instructions at all with respect to the testimony of the defendant's accomplice Maurice Gittens as to uncharged crimes. My colleagues in the majority acknowledge that this was error (*see People v Williams, supra*).

Although we agree that errors were committed at the defendant's trial with respect to the admission of evidence of uncharged crimes, the majority finds that those errors were harmless in light of the "overwhelming corroboration of the defendant's accomplice's testimony."

It is my opinion that the evidence against the defendant was

not overwhelming; it was underwhelming. Maurice Gittens was an accomplice as a matter of law, who testified pursuant to a cooperation agreement, limiting his sentence for the instant offense to 2½-5 years' imprisonment. Pursuant to CPL 60.22 (1), the People were required to produce "corroborative evidence tending to connect the defendant with the commission of such offense." The sufficiency of corroborative evidence connecting the defendant to the commission of the crime is not an issue in this case, since Blake's testimony connected the defendant with the commission of the crime. The majority acknowledges that Blake's testimony was crucial to this case for yet another reason: he "provided the only evidence that the defendant was taking part in an attempted robbery," and therefore the only evidence of the defendant's guilt of attempted robbery in the first degree, and felony murder.

Blake became an informant against the defendant after he was sentenced to 50 years in prison. Thereafter, his sentence was reduced to 15 years. His version of the events was sharply divergent from the version provided by Gittens and the other witnesses, which indicated that the defendant was a bystander who may have reasonably believed that he was acting to defend Gittens against the unjustifiable use of deadly physical force by an unknown assailant (*see* Penal Law § 35.15). By accepting Blake's version of the events, the jury necessarily rejected Gittens's version (*see People v Ellison,* 175 AD2d 846).

In view of the foregoing, it cannot be said that the evidence against the defendant was overwhelming, nor may the errors in admitting extensive evidence of uncharged crimes be considered harmless (*see People v Crimmins,* 36 NY2d 230).

The defendant's remaining contentions are either unpreserved for appellate review, without merit, or need not be reached (*see People v Ellison, supra*).