[875 NYS2d 31]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
JONATHAN CASANOVA, Appellant.

First Department, March 12, 2009

## APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation,* New York City (*Susan H. Salomon* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney,* New York City (*Mark Dwyer* of counsel), for respondent.

## OPINION OF THE COURT

SAXE, J.

In this appeal, defendant argues that his conviction of attempted murder in the second degree and related charges must be reversed because in the course of jury selection, the trial court, *without objection,* employed a preselection screening procedure in which it allowed any panel members who concluded that they would have scheduling problems to opt out of being considered for service on this case. Defendant argues that this procedure represented an abdication by the court of its judicial function, thereby violating his constitutional as well as statutory rights, necessitating reversal despite his failure to object.

The complainant, livery cab driver Mamadou Bah, was standing by the door of his cab, arguing with the two passengers he had just dropped off because they did not have the $15 fare, when four young men walked toward the cab. One, described by witnesses as in his early 20s, about six-feet, one-inch tall, wearing his hair in "braids" or "twists," grabbed Bah from behind, pressed a gun to the side of his head, threatened to kill him, demanded money, and then forced Bah into the cab. Another of the men, wearing a blue cast, entered the front of the cab on the passenger's side and removed $212 from Bah's right pocket. Bah cursed the man holding him, who responded by pointing his gun at Bah and pulling the trigger. Although the gun "clicked," it did not fire. The man walked a few steps away and adjusted the weapon, then returned to Bah, pointed the gun at him, and shot him in the face. The four men then walked away.

The bullet shot passed in one of Bah's cheeks and out the other. Bah, bleeding profusely, managed to drive to a nearby precinct, from where he was taken to a hospital.

Defendant was identified by eyewitnesses as the shooter. Another witness testified that one night defendant had come into

her apartment where he'd been staying, "kind of shaken up and tired" and out of breath, and told a story about how he shot and robbed a cab driver, in which he specified that he had shot the cabbie in the face, and that the gun had jammed once before he fired it successfully. The witness also testified that after wanted posters appeared in the area, defendant shaved off his hair.

Defendant was acquitted of robbery in the first degree, but was convicted of attempted murder in the second degree, assault in the first degree and one count of criminal use of a firearm in the first degree.

The trial court employed a somewhat unorthodox preselection screening process in the belief that jury service on a two-week attempted murder trial during the latter part of August would be likely to present scheduling problems for an unusually large number of potential jurors due to school schedules, vacation plans or work requirements. Rather than employing the usual preliminary process in which the court typically engages, by which individual panel members come up to the bench one at a time and the court listens to a long series of explanations of why serving as a juror on that case at that time would pose a hardship for each one, the court attempted to streamline the process. After informing the panel of the nature of the matter and the time it was expected to take, and answering panel members' questions, the court announced that any panel member who had such a scheduling problem would simply be excused from serving on this case, and should report back to the central jury room.

Defendant contends that by excusing all potential jurors who believed their schedules or other personal issues would not allow them to serve on a case of this length or of this seriousness, instead of rendering individual determinations as to juror hardship, the court abdicated its judicial function, thereby violating his constitutional and statutory rights to a jury selected in accordance with the law.

However, the issue was not preserved for appellate review. Not only did defendant fail to object to the jury selection screening procedure employed by the trial court, but the record creates the impression that the procedure was discussed and agreed upon beforehand, even though there was no affirmative agreement on the record regarding the procedure. In particular, the court told a jury panel, without correction or objection, that "the parties recognize" that it wouldn't make sense to keep

panel members through the voir dire process if scheduling problems would make service on the case too difficult.

The rule of preservation is not a mere formality; the requirement of a timely objection to a procedure at the trial level ensures that "errors of law which might otherwise necessitate a retrial can be avoided or promptly cured" (*see People v Martin,* 50 NY2d 1029, 1031 [1980]). By failing to object to the pre-screening selection procedure, defendant left the trial court without the opportunity to consider the arguments raised here. The argument must therefore be precluded as unpreserved; moreover, exercise of our interest of justice jurisdiction is not warranted (*see People v Solares,* 309 AD2d 502 [2003], *lv denied* 1 NY3d 581 [2003]; *People v Boozer,* 298 AD2d 261 [2002], *lv denied* 99 NY2d 555 [2002]; *People v Coleman,* 262 AD2d 219 [1999], *lv denied* 94 NY2d 798 [1999]).

Defendant contends that the failure to object is of no consequence, since the trial court's prescreening procedure was the type of error that is so fundamental that preservation is not required. It is true that there are "certain errors [that] need not be preserved" (*People v Ahmed,* 66 NY2d 307, 310 [1985]). "[S]uch errors have been classified as those 'that would affect the organization of the court or the mode of proceedings prescribed by law' " (*id.,* quoting *People v Patterson,* 39 NY2d 288, 295 [1976], *affd* 432 US 197 [1977]; *see also People v Mehmedi,* 69 NY2d 759, 760 [1987]). It is noteworthy, however, that the Court of Appeals has recently emphasized that "mode of proceedings" errors exempt from the preservation requirement should be treated as a "very narrow category" (*see People v Kelly,* 5 NY3d 116, 119 [2005]).

The *Ahmed* decision (66 NY2d at 310) presents a thorough list of trial errors that have been held to fall within this exception to the preservation requirement: trial before fewer than 12 jurors in a criminal case (*Cancemi v People,* 18 NY 128, 137 [1858]); trial before a court not of competent jurisdiction (*People v Bradner,* 107 NY 1 [1887]); trial for an "infamous crime" upon an information rather than by indictment (*People ex rel. Battista v Christian,* 249 NY 314 [1928]); a court's comment on the defendant's failure to testify (*People v McLucas,* 15 NY2d 167 [1965]); an improper instruction on the burden of persuasion (*People v Patterson,* 39 NY2d at 295-296); violation of the right to counsel (*People v Kinchen,* 60 NY2d 772 [1983]); and violation of the ban on double jeopardy (*People v Michael,* 48 NY2d 1 [1979]).

In *People v Ahmed*, the Court of Appeals viewed as a "mode of proceedings" error a situation in which the trial judge absented himself from the courtroom and allowed his law secretary to reread jury instructions to the jury in response to its questions. The Court concluded that the defendant's failure to object—indeed, the defense's affirmative consent to the procedure—did not preclude consideration of the propriety of the procedure, since the Constitution guarantees a right to a proper trial by jury, and "the presence and active supervision of a judge constitute[s] an integral component of the common-law right" (66 NY2d at 312, citing *Capital Traction Co. v Hof*, 174 US 1, 13 [1899]). Because "by delegating his function, at least in part, to his law secretary, the trial judge deprived the defendant of his right to a trial by jury" (*id.*), the *Ahmed* Court reversed the defendant's conviction and ordered a new trial.

We conclude that the procedure at issue in the present case does not fit within the "mode of proceedings" exception to the preservation requirement. Defendant's constitutional right to a jury trial was not impaired; at most, what was violated here was a statutorily prescribed jury selection procedure. Moreover, the applicable statutes, rules and case law give the trial court discretion on the matter of excusing jurors (*see* Judiciary Law § 517 [b]; 22 NYCRR 128.6-a; *People v Boozer*, 298 AD2d at 261; *People v Coleman*, 262 AD2d at 220; *People v Olmo*, 260 AD2d 410 [1999], *lv denied* 93 NY2d 975 [1999]). While the foregoing cases considered circumstances in which some degree of individual inquiry was made of jurors, they reflect that the preliminary excusing of potential jurors, even without the consent or input of counsel, need not be viewed as impairing a defendant's constitutional right to trial by jury.

Finally, regarding defendant's contention that the court erred in permitting the prosecutor to elicit testimony that judges determine the fairness of lineups in pretrial proceedings, it is unpreserved; in any event, any such error would be harmless in view of the overwhelming evidence of defendant's guilt (*see People v Crimmins*, 36 NY2d 230 [1975]).

Accordingly, the judgment of the Supreme Court, New York County (Bruce Allen, J.), rendered October 25, 2007, convicting defendant, after a jury trial, of attempted murder in the second degree, assault in the first degree and criminal use of

a firearm in the first degree, and sentencing him, as a second felony offender, to an aggregate term of 20 years, should be affirmed.

ANDRIAS, J.P., ACOSTA and RENWICK, JJ., concur.

Judgment, Supreme Court, New York County, rendered October 25, 2007, affirmed.