■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RUBEN YAGUDAYEV, Appellant. [937 NYS2d 279]—

In this matter involving alleged shoplifting, the defendant entered a Home Depot store, collected a number of valuable tools offered for sale by the store, placed the tools in a shopping cart, and pushed the cart toward the rear of the store. There, he parked the shopping cart, obtained a flatbed cart, selected a bathroom vanity, and removed the vanity from its box. He then loaded the tools into the vanity box and resealed it, leaving the vanity out of the box. According to the store's security personnel, the defendant placed the vanity box containing the tools on the flatbed cart, and pushed the flatbed cart outside the store without stopping at the registers. Throughout the course of these events, the defendant had been observed by the store's security personnel, who apprehended him just outside the store's entrance. The defendant was charged with grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree.

At trial, the People presented evidence establishing the above events. Defense counsel then elicited testimony from the defendant confirming the essential elements of the People's evidence, except that the defendant maintained that, instead of pushing the flatbed cart with the vanity box containing the tools outside the store, he pushed the cart with the tool-laden vanity box to the front of the store, gave another customer cash sufficient to pay for the vanity, and exited the store empty-handed on the pretext that he needed to attend to a child in his vehicle. Defense counsel elicited testimony from the defendant that the defendant intended for the other customer to present the vanity box to a cashier, at which point the cashier would only ring up the sale of a vanity, the customer would pay the $69.99 price for a vanity that was marked on the vanity box, and, unaware that the vanity box was filled with tools worth far more than the vanity, the customer would wheel the flatbed cart to the parking lot to deliver the vanity box to the defendant. Thus, defense counsel elicited testimony from the defendant that, pursuant to this scheme, the defendant intended to take tools from the store worth far more than the $75 or $76 he allegedly tendered to the obliging customer to pay for a vanity.

During the charge conference and in his summation, it became clear that defense counsel's strategy in presenting this testimony was to persuade the factfinder—here, a Supreme

Court Justice—that since the defendant never personally took the merchandise outside the store, he was guilty only of the lesser-included offense of *attempted* grand larceny in the fourth degree. Although the Trial Justice agreed to consider the lesser-included offense, defense counsel's strategy was legally unsustainable. The Trial Justice found the defendant guilty of both grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree. The defendant appeals, contending that his trial counsel was ineffective. We agree.

New York applies a "flexible standard" to evaluating claims of ineffective assistance of counsel (*People v Benevento*, 91 NY2d 708, 712 [1998]; *see People v Colville*, 79 AD3d 189, 197 [2010], *lv granted* 17 NY3d 743 [2011]). Thus, where "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation," counsel's performance will not be found ineffective (*People v Baldi*, 54 NY2d 137, 147 [1981]; *see People v Caban*, 5 NY3d 143, 152 [2005]; *People v Colville*, 79 AD3d at 197). In contrast to the federal standard, which looks to the outcome of the case, under our standard, a court must consider "prejudice . . . , a component which focuses on the fairness of the process as a whole rather than any particular impact on the outcome of the case" (*People v Colville*, 79 AD3d at 197; *see People v Hobot*, 84 NY2d 1021, 1022 [1995]).

In evaluating claims of ineffectiveness, a reviewing court must take care to "avoid both confusing true ineffectiveness with mere losing tactics and according undue significance to retrospective analysis" (*People v Baldi*, 54 NY2d at 146; *see People v Colville*, 79 AD3d at 197). "As long as the defense reflects a reasonable and legitimate strategy under the circumstances and evidence presented, even if unsuccessful, it will not fall to the level of ineffective assistance"; instead, a "claim of ineffective assistance of counsel will be sustained only when it is shown that counsel partook 'an inexplicably prejudicial course' " (*People v Benevento*, 91 NY2d at 712-713, quoting *People v Zaborski*, 59 NY2d 863, 865 [1983]).

A defense counsel's strategy of seeking the conviction of his or her client on a lesser-included offense does not, in and of itself, constitute ineffective assistance of counsel (*see People v Hines*, 46 AD3d 912, 913 [2007]). However, under the facts of this case, the strategy was legally indefensible.

In *People v Olivo* (52 NY2d 309 [1981]), the Court of Appeals considered three shoplifting cases. In each, the defendant had taken steps toward an apparent planned theft, but had not actually left the store before being apprehended (*id.* at 313-314). Af-

ter considering the law and the facts, the Court held that "in view of the modern definition of the crime of larceny, and its purpose of protecting individual property rights, a taking of property in the self-service store context can be established by evidence that a customer exercised control over merchandise wholly inconsistent with the store's continued rights" (*id.* at 321; *see People v Jennings*, 69 NY2d 103, 118 [1986]; *see generally People v Medina*, 18 NY3d 98 [2011]). To "treat merchandise in a manner inconsistent with the owner's continued rights— and in a manner not in accord with that of a prospective purchaser," an individual need not "actually walk[ ] out of the store" (*People v Olivo*, 52 NY2d at 318). Instead, "a customer who crosses the line between the limited right he or she has to deal with merchandise and the store owner's rights may be subject to prosecution for larceny" (*id.* at 321; *see People v LaRock*, 21 AD3d 1367, 1368 [2005]; *People v Basir*, 141 AD2d 745, 745-746 [1988]; *see also People v Banks*, 294 AD2d 935 [2002]; *People v Yusufi*, 247 AD2d 648, 649 [1998]).

Despite this clear precedent, defense counsel elicited the following testimony on direct examination:

"Q. So basically what you're saying is you put all the stuff in the box and you were gonna take it?

"A. Yes.

"Q. But you didn't?

"A. No, I didn't take it out [of] the store.

"Q. I mean but for them catching you and stopping her before she got past the register you probably would [have]?

"A. Yeah."

In light of the Court of Appeals' holding in *Olivo*, eliciting such testimony was " 'an inexplicably prejudicial' " strategy which amounted to eliciting an admission of guilt on the stand (*People v Benevento*, 91 NY2d at 713, quoting *People v Zaborski*, 59 NY2d at 865). Likewise, given the fact that this strategy permeated counsel's entire theory of the case, it cannot be characterized as an "[i]solated error[ ]" (*People v Henry*, 95 NY2d 563, 565 [2000]) and, even if it were, that error would be "sufficiently egregious and prejudicial as to compromise a defendant's right to a fair trial," and would suffice to establish ineffective assistance (*People v Caban*, 5 NY3d at 152; *see People v Hobot*, 84 NY2d at 1022; *People v Colville*, 79 AD3d at 197). Likewise, contrary to the People's contention, the fact that the Trial Justice agreed to consider the lesser-included offense of attempted grand larceny in the fourth degree is immaterial, since New York's standard focuses on fundamental fairness

rather than on the outcome of the case (*see People v Colville*, 79 AD3d at 197-198).

"[I]t is elementary that the right to effective representation includes the right to assistance by an attorney who has taken the time to review and prepare both the law and the facts relevant to the defense" (*People v Droz*, 39 NY2d 457, 462 [1976]; *see People v Bussey*, 6 AD3d 621, 623 [2004]; *see also People v Fogle*, 307 AD2d 299, 301 [2003]). Here, had defense counsel properly researched his theory of the case, he would have ascertained that it was legally unsound. Thus, while this Court will not "second-guess[ ]" an attorney's trial strategy, "the defendant's right to representation does entitle him [or her] to have counsel conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself [or herself] time for reflection and preparation for trial" (*People v Bussey*, 6 AD3d at 623 [internal quotation marks omitted]). Since defense counsel failed to meet this standard, the defendant is entitled to a reversal of the judgment and a new trial. Dillon, J.P., Lott, Roman and Cohen, JJ., concur.