THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TODD MALCOLM, Appellant. [16 NYS3d 306]—

Appeal by the defendant from a judgment of the Supreme Court, Queens County (Griffin, J.), rendered April 8, 2013, convicting him of grand larceny in the fourth degree and criminal possession of stolen property in the fifth degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is affirmed.

After a trial, the defendant was convicted of grand larceny in the fourth degree based on evidence that, on separate occasions between August 5, 2012, and August 20, 2012, he stole from a Home Depot store merchandise having an aggregate value of more than $1,000. The defendant was also convicted of criminal possession of stolen property in the fifth degree based on the August 20, 2012, incident. The evidence adduced at trial showed that on August 5, 2012, the defendant was observed in the tool corral of a Home Depot store located in College Point, Queens, loading a shopping cart with power tools. He then proceeded to the back of the store where he exited with the cart of power tools through an emergency door by the lumber area. The defendant loaded the power tools into a gray minivan with a black hood, which was waiting with a driver and parked approximately 10 feet from the emergency exit. The defendant then fled in the minivan. A Home Depot asset protection specialist testified that the total value of the stolen merchandise was approximately $940.

On August 13, 2012, the defendant entered the same Home Depot store, filled a shopping cart with two Dyson vacuums, a Dewalt power tool, a Rigid power tool drill set, and a Milwaukee power tool, and exited the store with the items through an emergency exit door located in the rear of the garden area. The defendant loaded the stolen items into the same minivan, which was parked outside the rear garden exit. The asset protection specialist testified that the Dyson vacuums each sold for $499, the Dewalt power tool sold for $299, the Rigid power tool drill set sold for $499, and the Milwaukee power tool sold for $259.

On August 20, 2012, the defendant was observed exiting the minivan in the parking lot of the same Home Depot and entering the store, where he loaded a shopping cart with four power drills. He was apprehended by store security while attempting to exit the store with the merchandise through the fire exit door in the garden area. Another asset protection specialist testified that the total value of the items taken on this date was $996.

A person is guilty of grand larceny in the fourth degree, inter

alia, "when he steals property and when . . . [t]he value of the property exceeds one thousand dollars" (Penal Law § 155.30 [1]). "[T]he People may prosecute for a single crime a defendant who, pursuant to a single intent and one general fraudulent plan, steals in the aggregate as a felon and not as a petty thief" (*People v Cox*, 286 NY 137, 145 [1941]; *see People v Rossi*, 5 NY2d 396, 401 [1959]; *People v Barry*, 46 AD3d 1340, 1341 [2007]; *People v Fayette*, 239 AD2d 696, 697 [1997]; *People v Rosich*, 170 AD2d 703 [1991]). Contrary to the defendant's contention, viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d 620, 621 [1983]), we find that it was legally sufficient to establish his guilt of grand larceny in the fourth degree beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt on that count was not against the weight of the evidence (*see* CPL 470.15 [5]; *People v Romero*, 7 NY3d 633 [2006]). The evidence presented at trial demonstrated that the defendant took similar expensive electronic merchandise from the same store on each occasion, under virtually the same circumstances, and with the assistance of the driver of the minivan. Contrary to the position of our dissenting colleague, we find that this evidence sufficiently established that the defendant stole merchandise "with a single [ongoing] intent, carried out in successive stages" (*People v Rossi*, 5 NY2d at 401), and that this was not merely a series of distinct petty thefts (*see People v Daghita*, 301 NY 223, 225 [1950] [affirming the defendant's conviction of a single continuing grand larceny where he stole a "considerable quantity of merchandise over a period of time" from the same store and "used a large portion of it to furnish his home and to outfit his family"]; *see also People v Henderson*, 163 AD2d 888 [1990]; *cf. People v Seymour*, 77 AD3d 976, 980 [2010] [insufficient proof that two thefts from the same store constituted a common scheme or plan, where the defendant stole one television during the first incident, a variety of merchandise during the second incident, and each theft was perpetrated in a different manner, since "there was no evidence of the defendant's intent to commit fraud or of his intent to engage in a plan of continuous fraud"]).

Furthermore, we disagree with our dissenting colleague that the evidence of the value of the merchandise taken on August 13, 2012, was insufficient. After viewing the surveillance video, the asset protection specialist testified that she recognized the merchandise the defendant wheeled out of the store and loaded into the minivan. The witness's testimony concerning the merchandise was consistent with the information obtained

from her mobile scanning device, which tracked the store's inventory. Notably, the total value of the items taken on August 13, 2012, as testified to by the asset protection specialist, standing alone, exceeded the $1,000 threshold necessary to sustain the defendant's conviction of grand larceny in the fourth degree (*see* Penal Law § 155.30 [1]). To the extent the dissent concludes that the testimony of the asset protection specialist concerning the identity of the items taken on August 13, 2012, was not credible, the witness's credibility "was an issue primarily for the jury to determine, and we will not substitute our judgment for that of the jurors, who had the advantage of seeing and hearing the witness testify" (*People v Sabatini*, 130 AD2d 524, 524 [1987]; *see People v McCarthy*, 293 AD2d 490, 491 [2002]).

Viewing the evidence in the light most favorable to the prosecution (*see People v Contes*, 60 NY2d at 620), we find that it was legally sufficient to establish the defendant's guilt of of criminal possession of stolen property in the fifth degree beyond a reasonable doubt (*see People v Olivo*, 52 NY2d 309, 321 [1981]; *see also People v Yagudayev*, 91 AD3d 888, 890-891 [2012]). Moreover, upon our independent review pursuant to CPL 470.15 (5), we are satisfied that the verdict of guilt as to that crime was not against the weight of the evidence (*see People v Romero*, 7 NY3d at 633).

The defendant's contention that the sentence imposed was improperly based on the crime of which he was acquitted is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Dubois*, 116 AD3d 878 [2014]) and, in any event, without merit (*see People v Morgan*, 27 AD3d 579 [2006]; *People v Robinson*, 250 AD2d 629 [1998]). Moreover, the sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]).

The defendant's remaining contentions are unpreserved for appellate review (*see* CPL 470.05 [2]) and, in any event, without merit. Rivera, J.P., Leventhal and Roman, JJ., concur.

Hinds-Radix, J., concurs in part and dissents in part, and votes to modify the judgment, on the law, by reducing the defendant's conviction of grand larceny in the fourth degree to petit larceny, and vacating the sentence imposed on that count, and as so modified, to affirm the judgment, with the following memorandum: The defendant stands convicted of grand larceny in the fourth degree (Penal Law § 155.30 [1]) relating to three instances of shoplifting from a Home Depot store occurring on August 5, 2012, August 13, 2012, and August 20, 2012, respectively. His conviction is based upon a theory that the aggregate monetary value of the items stolen on those three occasions exceeds $1,000.

At trial, a Home Depot asset protection specialist testified that on August 5, 2012, she was walking the floor of the subject store and saw the defendant near the power tools. The defendant selected certain power tools, placed them in a shopping cart and then proceeded to the back of the store, and exited through an emergency door by the lumber area. He put the merchandise inside a gray minivan with a black hood, which was waiting with a driver, entered the minivan, and left the scene. The asset protection specialist testified that the total value of the items stolen was approximately $940.

On August 14, 2012, the same asset protection specialist arrived at work and discovered that the zip tie on the emergency door in the garden area had been cut. She reviewed the surveillance videotape footage for the previous day—August 13, 2012—and then went to the sales floor to check a mobile scanning device, which indicated that two Dyson vacuums, a Dewalt power tool drill set, a Rigid power tool, and a Milwaukee power tool were missing from the shelves.

The surveillance videotapes of the main entrance and the rear garden exit from August 13, 2012, were played for the jury. The asset protection specialist identified the defendant on the videotapes. The defendant exited from the garden area and loaded the merchandise into what appeared to be same gray minivan that the defendant used on August 5, 2012. She identified the items stolen as the same Dyson vacuums, Dewalt power tool drill set, Rigid power tool, and Milwaukee power tool that were missing from the shelves. She testified that she recognized the items from the appearance of the boxes loaded into the minivan. An observation of the videotape reveals that the appearance of the boxes on the videotapes is barely visible. The asset protection specialist acknowledged that she could not read any lettering on the boxes and had to identify the boxes by their colors, which were not distinctive. After refreshing her recollection, she testified that the Dyson vacuums sold for $499, the Dewalt power tool drill set sold for $299, the Rigid power tool sold for $499, the Milwaukee power tool sold for $259.

On the evening of August 20, 2012, another asset protection specialist was conducting surveillance on the floor when he saw the defendant in the power tool area. The defendant pushed on the back emergency exit door, but never left the store. He was apprehended with a Dewalt drill priced at $199, a Makita drill priced at $279, and two Milwaukee drills priced at $259 each, totaling $996 in value.

The defendant was convicted of grand larceny in the fourth

degree (Penal Law § 155.30 [1]) as a lesser included offense of grand larceny in the third degree, based upon the theory that the value of the property exceeded $1,000. He was also convicted of criminal possession of stolen property in the fifth degree (Penal Law § 165.40), which does not require proof of the monetary value of the property.

A primary issue in this case is whether the value of property shoplifted from Home Depot on the three separate occasions may be aggregated to raise of level of the defendant's crime from petit larceny to grand larceny based upon "a single intent, carried out in successive stages" (*People v Rossi*, 5 NY2d 396, 401 [1959]). This concept was first enunciated by the Court of Appeals in *People v Cox* (286 NY 137, 141 [1941]), which held that, "where property is stolen from the same owner and from the same place in a series of acts, those acts constitute a single larceny regardless of the time elapsing between them, if the successive takings be pursuant to a single intent and design and in execution of a common fraudulent scheme." The taking in that case involved stealing nickel subway fares pursuant to a "general fraudulent design which was created before the misappropriations began and continued throughout the entire period" (*id.* at 143). The Court noted that "distinct larcenies coincident solely in method, place or time" would not be enough (*id.*). Likewise, *People v Rossi* (5 NY2d 396 [1959]) involved a fraudulent scheme to steal money from a health insurer by submitting false claims.

In *People v Seymour* (77 AD3d 976, 980 [2010]), this Court ruled that the proof of successive thefts of merchandise from same store (also Home Depot) was insufficient for aggregation, "as there was no evidence of the defendant's intent to commit fraud or of his intent to engage in a plan of continuous fraud," which was defined as larceny by false pretenses, false promise, or embezzlement (*see People v Perry*, 114 AD3d 1282 [2014] [pension fraud]; *People v Barry*, 46 AD3d 1340 [2007] [embezzlement]; *People v Tighe*, 2 AD3d 1364 [2003] [larceny by false pretenses and false promise]; *People v Bastian*, 294 AD2d 882 [2002] [larceny by false promise]; *People v Rosich*, 170 AD2d 703 [1991] [Medicaid fraud]; *People v Lofton*, 73 Misc 2d 285 [Crim Ct, NY County 1973] [larceny by false pretenses]).

The instant case involves shoplifting as opposed to a scheme to defraud. In support of the claim that the value of goods stolen in separate shoplifting incidents which do not involve a scheme to defraud may be aggregated, the majority cites *People v Daghita* (301 NY 223 [1950]). In that case, the Court of Appeals upheld the defendant's conviction of grand larceny aris-

ing from his theft of a considerable quantity of merchandise over a period of time from the same store. The defendant, a policeman, obtained access to the store at night with the aid of his accomplice, the night watchman at the store, and on all but one occasion used the authority of his policeman's uniform to aid in the theft (*see People v Daghita*, 276 App Div 20 [1949], *mod* 301 NY 223 [1950]). In effect, the defendant and the night watchman were acting in concert to embezzle merchandise from the night watchman's employer, aided by the defendant's false pretense that he was acting in his capacity as a policeman. *People v Henderson* (163 AD2d 888 [1990]), which is also cited by the majority, involved a fraudulent scheme whereby an accomplice provided the defendant with fraudulent sales receipts for the items stolen.

In the instant case, which involved successive trespassory takings, there was no evidence of a fraudulent scheme which would permit aggregation. Conceivably a single ongoing intent could be established without evidence of a fraudulent scheme, if there is other evidence of a single plan. However, in this case there is no evidence of a single plan. The fact that the defendant went back to the same Home Depot was not evidence that when he went there the first time, on August 5, 2012, or the second time, on August 13, 2012, he planned to do so on subsequent occasions. Each time the defendant succeeded, he may have formed a new intent to return, because he succeeded.

Further, the evidence of the value of the items taken on August 13, 2012, which the People claim exceeds the $1,000 threshold, is insufficient. The testimony as to the value of the items stolen was based upon testimony as to what items were missing from the store's shelves—not what items were taken by the defendant. The store's asset protection specialist attempted to identify the items stolen by the defendant by viewing boxes which are barely visible on a videotape of the theft. She acknowledged that she could not read any lettering on the boxes and had to identify the boxes by their colors, which were not distinctive.

Accordingly, I would modify the defendant's conviction of grand larceny in the fourth degree to petit larceny, and vacate the sentence imposed on that count. Since the defendant has already served the maximum sentence allowed for the class A misdemeanor of petit larceny, we would need not remit for resentencing on that count (*see People v McKinney*, 91 AD3d 1300 [2012]).