■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OMAR XOCHIMITL, Appellant. [47 NYS3d 339]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Del Giudice, J.), rendered November 27,

2012, convicting him of manslaughter in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the judgment is affirmed.

Contrary to the defendant's contention, the Supreme Court properly denied suppression of his postarrest statements. " '[T]he police may lawfully conduct a warrantless search when they have obtained the voluntary consent of a party who possesses the requisite degree of authority and control over the premises or personal property in question' " (*People v Watson*, 101 AD3d 913, 914 [2012], quoting *People v Cosme*, 48 NY2d 286, 290 [1979]; *see Payton v New York*, 445 US 573, 576 [1980]). Here, the evidence adduced at the suppression hearing established that an elderly female relative, who lived in the subject apartment with the defendant and other members of their family, gave the police consent to enter the apartment by opening the door and stepping aside in response to the officers' request to enter (*see People v Lopez*, 104 AD3d 876, 876 [2013]; *People v Nielsen*, 89 AD3d 1041, 1042 [2011]; *People v Bran*, 82 AD3d 1000, 1000 [2011]; *People v Taylor*, 111 AD2d 520, 521 [1985]). The evidence further established that the woman's consent was voluntarily given and was not the product of coercion (*see People v Starks*, 91 AD3d 975, 976 [2012]; *People v Quagliata*, 53 AD3d 670, 672 [2008]).

The defendant's contention that the Supreme Court discharged potential jurors based upon their availability for the month-long trial without conducting a sufficient independent inquiry is unpreserved for appellate review (*see People v King*, 110 AD3d 1005, 1006 [2013]; *People v Casanova*, 62 AD3d 88, 92 [2009]; *People v Toussaint*, 40 AD3d 1017, 1017-1018 [2007]) and, in any event, without merit (*see People v Umana*, 76 AD3d 1111, 1112 [2010]; *People v Toussaint*, 40 AD3d at 1017-1018).

The defendant's contention that the sentence imposed was improperly based on the crime of which he was acquitted is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Malcolm*, 131 AD3d 1068, 1071 [2015]) and, in any event, without merit (*see People v Dubois*, 116 AD3d 878, 878 [2014]). Moreover, the sentence imposed was not excessive (*see People v Malcolm*, 131 AD3d at 1071; *People v Gilliam*, 168 AD2d 687, 688 [1990]). Dillon, J.P., Chambers and Brathwaite Nelson, JJ., concur.

Barros, J., dissents, and votes to remit the matter to the Supreme Court, Kings County, for a new determination of that

branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials in accordance herewith, and thereafter a report to this Court advising of the new determination, and to hold the appeal in abeyance in the interim, with the following memorandum: Because the People's evidence at the suppression hearing was insufficient, as a matter of law, to meet their heavy burden in establishing that consent was freely and voluntarily given to the police before they entered the defendant's home, I dissent.

At 6:00 a.m. on April 15, 2011, Detective John Kelly, accompanied by a team of officers from the violent fugitive task force who were armed and wearing bulletproof vests, appeared at the defendant's family's apartment to arrest the defendant for illegally reentering the country. The police suspected the defendant of committing a gang homicide but did not have probable cause to arrest him for that crime. The police did not obtain a warrant for the defendant's arrest.

One officer was stationed at the front of the apartment building and two at the back. Detective Kelly was accompanied by at least three officers at the door of the defendant's family's apartment. Detective Kelly knocked on the door. An "elderly lady" opened the door. At the suppression hearing, Detective Kelly testified on direct examination that the elderly woman "motioned her hand to come in." But on cross-examination, he conceded that the elderly woman only "backed up," and then the officers "stepped in." He interpreted the elderly woman's backing away as a suggestion "to come in."

Detective Kelly did not recall whether the woman spoke English, and he testified that he did not have "much of a conversation" with her. Detective Joseph Perry, who also testified at the suppression hearing, stated that he was informed by Detective Kelly that the woman only spoke Spanish (see CPL 710.60 [4] [hearsay evidence is admissible to establish any fact in a suppression hearing]). Detective Kelly testified that a Spanish-speaking officer was present at the time of arrest, but the People did not produce that officer at the hearing.

After entering the apartment, the officers walked into the kitchen and informed the defendant that they were there to speak with him. The officers asked the defendant to step into the hallway, whereupon they arrested him for illegally reentering the country.

In contrast to Detective Kelly's testimony, the defendant's sister testified that when her family heard the police loudly banging on the door, she asked to see a warrant, and she was told by an officer that "it's here." When her father opened the

door to see the warrant, the police entered the apartment. She testified that nobody gestured to allow the police to enter the home.

The Fourth Amendment of the United States Constitution "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest" (*Payton v New York*, 445 US 573, 576 [1980]) in the absence of exigent circumstances (*see Kirk v Louisiana*, 536 US 635, 638 [2002]). Here, the police did not have a warrant, and there were no exigent circumstances justifying the officers' entry into the defendant's home. The People relied solely upon the alleged consent of the unidentified elderly woman at the door of the apartment.

"When the People rely on consent to justify an otherwise unlawful police intrusion, they bear the 'heavy burden' of establishing that such consent was freely and voluntarily given" (*People v Marcial*, 109 AD3d 937, 938 [2013], quoting *People v Gonzalez*, 39 NY2d 122, 128 [1976]; *see People v Whitehurst*, 25 NY2d 389, 391 [1969]; *People v Quagliata*, 53 AD3d 670, 671 [2008]; *People v Vasco*, 191 AD2d 602, 603 [1993]). Consent is "voluntary when it is a true act of the will, 'an unequivocal product of an essentially free and unconstrained choice' " (*People v Richardson*, 229 AD2d 316, 316 [1996], quoting *People v Gonzalez*, 39 NY2d at 128). "The People's burden of proving voluntariness 'cannot be discharged by showing no more than acquiescence to a claim of lawful authority' " (*People v Marcial*, 109 AD3d at 938, quoting *Bumper v North Carolina*, 391 US 543, 548 [1968]). "Whether consent is voluntary must be determined from all of the relevant circumstances, including such factors as whether the consenter was in custody, whether the consenter had prior experience with the police, whether the consenter had been evasive or uncooperative prior to the purported consent, and whether the consenter was advised of his [or her] right to refuse to consent" (*People v Richards*, 119 AD2d 597, 597 [1986]; *see People v Gonzalez*, 39 NY2d at 128-130).

Given the totality of the circumstances here, including the number of officers present at the door, the early morning hour, the lack of any verbal communication between the officers and the elderly woman, and testimony by the police that the elderly woman only spoke Spanish and that she was spoken to in English, the People failed, as a matter of law, to meet their heavy burden of demonstrating that the elderly woman consented to the officers' warrantless entry into the home. The record reflects that the officers did not even attempt to make

minimal efforts to obtain verbal consent to enter the home. While courts have recognized under different facts and circumstances that consent to enter a home may be given by certain gestures such as stepping aside from a door (*see People v Lopez*, 104 AD3d 876, 876 [2013] [the defendant opened a motel room door, stepped back, and allowed a single detective to enter the room]; *People v Davis*, 120 AD2d 606, 607 [1986]; *People v Taylor*, 111 AD2d 520, 521 [1985]), here, the People failed to show that the elderly woman's act of backing away from the door was intended as an invitation to enter, as opposed to being a product of " 'official coercion, actual or implicit, overt or subtle' " (*People v Marcial*, 109 AD3d at 938, quoting *People v Gonzalez*, 39 NY2d at 128; *see People v Richardson*, 229 AD2d at 316-317 ["In our view, the defendant's act of glancing over his shoulder at another man inside the apartment, which was apparently in response to the officer's inquiry if anything was wrong, and which the officer 'took . . . to mean' that he could enter the apartment, is insufficient to constitute an intentional waiver of a constitutional right"]).

As an alternative ground to affirm the judgment, the People contend that the defendant's postarrest statements were attenuated from any illegal arrest. "Evidence that is obtained through illegal police action is not automatically subject to the exclusionary rule" (*People v Bradford*, 15 NY3d 329, 333 [2010]). A confession that is made after an illegal arrest is not subject to suppression if the People demonstrate that the confession was attenuated from the illegal arrest (*see id.* at 333; *People v Conyers*, 68 NY2d 982, 983 [1986]). "The attenuation doctrine requires a court to consider 'the temporal proximity of the arrest and the confession, the presence of intervening circumstances and, particularly, the purpose and flagrancy of the official misconduct' " (*People v Bradford*, 15 NY3d at 333, quoting *People v Conyers*, 68 NY2d at 983). In light of its determination that the arrest was legal, the Supreme Court never reached the People's attenuation argument. Since the alternative issue raised by the People on appeal has not been determined by the Supreme Court, and the resolution of that issue affects the determination of the suppression motion, I vote to hold the defendant's appeal in abeyance and remit the matter for consideration of the alternative issue based upon the evidence presented at the previously conducted suppression hearing (*see People v Chazbani*, 144 AD3d 836 [2016]).