[890 NYS2d 166]

The People of the State of New York, Respondent, v Thomas Roblee, Appellant.

Third Department, December 3, 2009

## APPEARANCES OF COUNSEL

*Paul J. Connolly*, Delmar, for appellant.

*Kathleen B. Hogan, District Attorney*, Lake George (*Kevin P. Donlon* of counsel), for respondent.

**OPINION OF THE COURT**

KANE, J.

During the course of an argument with his girlfriend (hereinafter the victim), defendant kicked her in the head with his steel-toed boot. He was arrested and later charged by indictment with assault in the second degree and criminal possession of a weapon in the third degree. At arraignment, Queensbury Town Court issued an order of protection in the victim's favor. When the People became aware that defendant was writing letters to the victim from jail, they obtained a superceding indictment charging defendant with the original crimes and four counts of aggravated criminal contempt.* During trial, County Court reduced the four charges of aggravated criminal contempt to criminal contempt in the second degree. The jury found defendant guilty of those charges and assault in the second degree. Defendant appeals.

■ The verdict on the assault charge was based on legally sufficient evidence and was not against the weight of the evidence. Steel-toed boots, worn while kicking someone in the head, can constitute a dangerous instrument under the assault statute (*see People v Hines*, 39 AD3d 968, 969 [2007], *lv denied* 9 NY3d 876 [2007]; *People v Chia Yen Yun*, 35 AD3d 494, 494 [2006], *lv denied* 8 NY3d 920 [2007]; *People v Taylor*, 276 AD2d 933, 935-936 [2000], *lv denied* 96 NY2d 788 [2001]; *see also* Penal Law § 10.00 [13]; § 120.05 [2]). The boots, together with the testimony of the victim, her treating medical provider and the arresting officer, constituted sufficient evidence that defendant was guilty of assault in the second degree, and the verdict was not against the weight of the evidence (*see People v Hines*, 39 AD3d at 969).

■ The charges of criminal contempt in the second degree are not supported by legally sufficient evidence. "To sustain a finding of . . . criminal contempt based on an alleged violation of a court order it is necessary to establish that a lawful order of the court clearly expressing an unequivocal mandate was in effect" and the order was disobeyed by a person having knowledge of that order (*Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y.*, 70 NY2d 233, 240 [1987] [citation omitted]; *see Matter of Board of Educ. of City School Dist. of City of N.Y. v Mills*, 25 AD3d 952, 954 [2006]; *Matter of Civil Serv. Empls. Assn., Local 1000,*

---

* The charge of criminal possession of a weapon was later dismissed.

*AFSCME, AFL-CIO [State of New York]*, 273 AD2d 668, 671 [2000]). Any ambiguity in the court's order must be resolved in the defendant's favor (*see Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y.*, 70 NY2d at 241; *Hae Mook Chung v Maxam Props., LLC*, 52 AD3d 423, 423 [2008]; *Matter of Holtzman v Beatty*, 97 AD2d 79, 82 [1983]). Here, the order of protection form directs the court to check applicable paragraphs. Town Court checked the box requiring defendant to stay away from the victim, her home, school, business and place of employment. The court did not check the box that would direct defendant to "Refrain from communication by mail or by telephone, e-mail, voice-mail or other electronic means." On the line for other conditions, the court wrote "no contact [with the victim]." While the Town Justice testified that he intended the order to prevent defendant from all contact with the victim in any manner, the order itself is ambiguous. The "no contact" provision that was handwritten as a condition could be interpreted as prohibiting any physical or in-person contact. Considering that provision, along with the absence of a checkmark on the provision prohibiting communication by mail, a reasonable person might interpret the order as permitting defendant to write letters to the victim. As the order does not clearly and unequivocally prohibit defendant from writing letters, the criminal contempt charges must be dismissed (*see Hae Mook Chung v Maxam Props., LLC*, 52 AD3d at 423; *Matter of Holtzman v Beatty*, 97 AD2d at 82-83).

Reversal on the remaining count is required due to County Court's method of jury selection. Defendant had a right to have the jury "selected at random from a fair cross-section of the community" (Judiciary Law § 500). The court was required to swear as jurors the first 12 members of the panel who were called and not excused as prescribed in CPL article 270 (*see* CPL 270.05 [2]). Panel members must be excused if they are found unqualified, cannot be impartial, or for other reasons enumerated in the statutes (*see* CPL 270.15 [2]; 270.20 [1]). If there is doubt as to whether a potential juror can remain fair and impartial or is otherwise unqualified to act as a juror, the court must inquire further to clarify the person's position (*cf. People v Henderson*, 45 AD3d 903, 904 [2007]).

Here, as is its right, County Court conducted pre-voir dire questioning of the potential jurors to identify those who would possibly have problems serving in this case (*see People v Boulware*, 29 NY2d 135, 140 [1971], *cert denied* 405 US 995 [1972];

*compare People v Sloan,* 79 NY2d 386, 392 [1992]). The court, in a single question, asked potential jurors, en masse, to raise their hands if any of the following situations applied: they were suffering from a serious health or physical problem; they knew defendant, his counsel, the District Attorney or the prosecuting assistant district attorneys; they had pressing personal or business reasons which could prevent them from serving; or they or a close friend or family member had been accused of, convicted of or been the victim of domestic violence or any crime. Before asking about these issues, the court stated that it and the attorneys would talk more about these issues with anyone to whom they applied. Those who raised their hands in response to this question were then asked to step aside, to return later only if needed. The jury was selected without recalling or further questioning any of the potential jurors who had fallen into a category identified by the court. Defense counsel timely objected to the exclusion of these jurors without any further inquiry by the court.

While County Court has broad discretion in excusing jurors (*see People v Boulware,* 29 NY2d at 140; *see also People v Sloan,* 79 NY2d at 392), the procedure used here was improper. The proper practice would be for the court to immediately follow up with those potential jurors to identify their specific problems and determine whether those individuals should remain in the pool or be excused (*cf. People v Henderson,* 45 AD3d at 904; *People v Gayle,* 238 AD2d 133, 133-134 [1997], *lv denied* 90 NY2d 893 [1997]; *see also* Judiciary Law § 518 [requiring court to discharge person who is not qualified to serve as juror]), rather than setting them aside within the jury pool, yet not calling them into the panel until all other potential jurors had been either seated or excused. The method employed here essentially excluded individuals from the pool based on a vague answer to a multifaceted question, which did not establish whether those individuals were partial or otherwise unqualified. As defense counsel pointed out, the court had informed the potential jurors that they would have a chance to discuss those issues in more detail with the court, and many of those potential jurors may not have been subject to exclusion from the pool. Significantly, none of these jurors asked to be excused or indicated that they could not be fair and impartial. Defendant, when raising his objection, noted that he may have wanted some of those individuals—such as anyone wrongly accused of domestic violence—as jurors. The jury selection method utilized here effectively excluded potential jurors without determining if they

were unqualified or biased, and without permitting defendant to question them concerning their fitness to serve (*see* CPL 270.15 [1] [c]). Under these circumstances, the jury was not chosen "at random from a fair cross-section of the community" (Judiciary Law § 500). This error requires reversal and remittal for a new trial on the remaining count of the indictment (*see Hildreth v City of Troy*, 101 NY 234, 237-240 [1886]).

■ We need only address one remaining issue applicable to the retrial. County Court properly denied defendant's motion to suppress his oral admissions. Initially, the court did not hold two *Huntley* hearings, but merely continued the hearing at a later date due to the unavailability of a witness requested by the defense. Thus, the court could fully consider the testimony from the first day of the hearing when determining the suppression motion. On the merits, defendant's statements were admissible because they were not the result of custodial interrogation. The arresting officer, who was deemed credible by the court, testified that he drove his police car to a store and waved for defendant, who was inside the store's glass foyer, to approach him. When defendant approached the officer, the officer engaged defendant in conversation, including why he kicked the victim in the head with steel-toed boots. Defendant's responses to that question are the statements he sought to suppress. The officer knew defendant before this incident, defendant voluntarily approached the officer, defendant was not handcuffed or restrained, the officer never reached for or unholstered his weapon, and defendant chose to speak to the officer. Under the circumstances, a reasonable person innocent of any crime would not have believed that he was in custody prior to making an inculpatory statement (*see People v Pouliot*, 64 AD3d 1043, 1046 [2009]; *People v Cleveland*, 257 AD2d 689, 691-692 [1999], *lv denied* 93 NY2d 871 [1999]). Therefore, *Miranda* warnings were unnecessary and defendant's statements were admissible.

Defendant's remaining arguments are either academic or will be revisited by County Court in connection with the new trial.

Peters, J.P., Rose, Kavanagh and McCarthy, JJ., concur.

Ordered that the judgment is reversed, on the law and the facts, counts 3 through 6 of the indictment charging criminal contempt in the second degree dismissed, and matter remitted to the County Court of Warren County for a new trial on the count of assault in the second degree.