OPINION OF THE COURT
Pigott, J.
Defendant was convicted, after a jury trial, of burglary in the first degree (Penal Law § 140.30 [3]) and assault in the second degree (Penal Law § 120.05 [2]) for events that occurred on *151 March 9, 2008. On that date, defendant and an accomplice attacked the victim, ransacked her apartment and stole $300 from her purse. Defendant argues on this appeal that the trial court committed a mode of proceedings error when it discharged potential jurors on hardship grounds without conducting a sufficient inquiry into the particular hardship, and erred in precluding evidence of third-party culpability proffered by the defense that, according to defendant, would have demonstrated that other unidentified individuals had a motive to attack the victim. Defendant further argues that she was deprived of the effective assistance of counsel because trial counsel failed to object to certain improper statements made by the prosecutor during summation.
I.
At trial, the victim testified that, at approximately 4:00 a.m. on March 9, 2008, she returned to her third-floor apartment after work. While she was unlocking her apartment door, a masked man and defendant (who was unmasked) appeared from a nearby stairwell. Defendant was brandishing a knife. The masked man struck the victim on the forehead with a gun, causing her to fall to the floor. Defendant stepped on the victim’s stomach, grabbed the victim’s keys and, along with the masked man, dragged the victim into her apartment. While inside, defendant cut the strap to the victim’s purse, dumped the purse’s contents and stole money. Defendant alternated between striking the victim and ransacking the apartment. At one point, defendant asked the victim if she was “willing to die for Tone” — a reference to Tony Mann, the victim’s boyfriend and father of defendant’s two children. The victim was taken by ambulance to a hospital, where she received treatment for cheek and nasal fractures and other injuries to her face and head. Approximately a week after the incident, the victim picked the defendant out of a lineup and she was thereafter arrested.
The case proceeded to trial. Prior to voir dire, the court informed the panel that it expected the trial to last approximately five days, and stated that it recognized that for some of the prospective jurors five days may be a hardship because of family obligations or business commitments. It stated that if any of the prospective jurors had a hardship based on family or business obligations, the court could excuse them from the trial but not from jury duty, meaning that the *152 excused prospective jurors would be returned to the jury room where they could be assigned to another case. The court asked those prospective jurors who had such hardships to raise their hands and directed them to the center aisle, at which point the court apprised them that “[t]he clerk will speak to you about your hardship.”
After those prospective jurors exited the courtroom, the court provided the remaining prospective jurors with a general synopsis of the charges that were brought against defendant, along with a general statement concerning the People’s allegations and the defendant’s alibi defense. The court then asked the remaining prospective jurors if any of them did not believe that they could be a fair and impartial juror. After excusing a couple prospective jurors, the court began the process of formal voir dire, which involved calling 16 names at random from the remaining prospective jurors and directing them to the jury box. Following questioning by the court and the attorneys, a jury was empaneled and sworn in.
The People thereafter presented their case, the theory of which was that defendant, jealous at having been left by Mann with whom she’d had two children, sought revenge against the victim. In her defense, defendant called three alibi witnesses, all of whom testified that defendant had returned home at 1:00 a.m. the day of the incident and remained there. Defendant also unsuccessfully sought to introduce third-party culpability evidence indicating that two men who were upset with Mann over a drug dispute, rather than defendant, had a motive for attacking the victim and burglarizing her apartment.
During summation, defense counsel attacked the credibility of the People’s witnesses, including the victim, and steadfastly maintained that defendant’s alibi defense had created reasonable doubt. The prosecutor argued in his summation that the case was about “jealousy” and “obsession” and “hell have [sic] no fury as a woman’s scorn [sic].” He posited that “[o]nly a woman would inflict this kind of beating. Only a woman who is trying ... to maim and disfigure her rival . . . would cause this kind of injury,” and that “ [t]his crime is a woman. That’s why she did it at [the victim’s] house” by laying in wait on the stairs and “toying with her rival.”[1] Defense counsel did not object to any of these statements.
*153 The jury convicted defendant of burglary in the first degree and assault in the second degree. Defendant was sentenced to concurrent terms of nine years’ imprisonment and five years’ postrelease supervision on the burglary conviction, and seven years’ imprisonment and three years’ postrelease supervision on the assault conviction.
The Appellate Division affirmed in a 3-1 decision, holding, as relevant here, that defendant failed to preserve her contention that the trial court improperly discharged potential jurors based upon hardship without first conducting a sufficient inquiry, that the trial court correctly precluded as speculative so-called third-party culpability evidence and that, although certain of the prosecutor’s summation statements improperly included gender stereotyping, the comments did not deprive defendant of a fair trial (110 AD3d 1005, 1006-1007 [2d Dept 2013]). The dissenting Justice would have reversed the judgment and ordered a new trial in the interest of justice on the ground that the prosecution’s summation comments improperly appealed to gender bias and that certain comments that attacked defendant’s alibi defense as having been devised in the last minute were unsupported by the record (see id. at 1007-1008 [Hinds-Radix, J., dissenting]).
A Judge of this Court granted defendant leave to appeal (23 NY3d 1022 [2014]) and we now affirm.
II.
Defendant first contends that the trial court abdicated its judicial function by allowing prospective jurors to opt out of serving on the jury due to a hardship and delegated that function to the clerk and the prospective jurors. Defendant acknowledges that trial counsel failed to object to the court’s procedure, so the issue presented is whether the court, assuming that the procedure was error in the first place, committed a mode of proceedings error that deprived defendant of her right to a jury trial under the supervision of a judge.
This Court may reach unpreserved questions of law “in a very narrow category of cases” where the errors “go to the essential validity of the process and are so fundamental that the entire trial is irreparably tainted” (People v Kelly, 5 NY3d 116, *154 119-120 [2005]; see People v Ahmed, 66 NY2d 307 [1985], rearg denied 67 NY2d 647 [1986]). Errors contained in this “tightly circumscribed class” do not require preservation (Kelly, 5 NY3d at 120). We found such an error in Ahmed, where the trial judge absented himself and had delegated certain functions to the law secretary during jury deliberations (see Ahmed, 66 NY2d at 310). We concluded that an issue of law was presented for our review, notwithstanding the defendant’s failure to timely object to the procedure, because the trial judge’s “failure ... to retain control of deliberations” implicated “the organization of the court or the mode of proceedings prescribed by law” (id. [citation omitted]). Upon reaching the merits, we held that the actions of the trial judge, including his delegation of certain responsibilities to his law secretary, “deprived defendant of his right to a proper trial by jury” (id. at 311).
Years later in People v Toliver (89 NY2d 843 [1996]), we acknowledged that “[t]he presence of and supervision by a Judge constitutes an integral component of the right to a jury trial” (id. at 844, citing Ahmed, 66 NY2d at 311-312). In Toliver, the trial judge absented himself from portions of the actual voir dire examination of the jurors and questioning by the attorneys. We held that this absence violated the defendant’s “fundamental right to have a Judge preside over and supervise the voir dire proceedings while prospective jurors are being questioned regarding their qualifications,” and that the trial judge’s relinquishment of control over the proceedings or delegation of the duty to supervise deprived defendant of his right to a jury trial (Toliver, 89 NY2d at 844 [emphasis supplied]). The trial judge’s absence from actual voir dire constituted reversible error because “it is the Judge who is the ultimate arbiter of a prospective juror’s fitness to serve” (id. at 845, citing CPL 270.20 [entitled, “Trial jury; challenge for cause of an individual juror”]).
Relying primarily on Ahmed and Toliver, defendant asserts that she was deprived of her right to have a judge “supervise” the process over which prospective jurors are excused for purposes of hardship, such that no objection to the procedure was required. We disagree.
There are significant distinctions between this appeal and Ahmed and Toliver. The mode of proceedings error in Ahmed was the court’s “failure ... to retain control of deliberations,” which we held impacted the defendant’s constitutional right to a trial by jury (Ahmed, 66 NY2d at 310). Indeed, we later *155 acknowledged that the procedure utilized by the trial court in Ahmed constituted a “fundamental flaw[ ]” in the proceedings that did not require an objection (People v Becoats, 17 NY3d 643, 651 [2011], cert denied 566 US —, 132 S Ct 1970 [2012]).
Toliver is easily distinguishable from the present case because, first and foremost, it is not a mode of proceedings case,[2] because defense counsel registered an objection to the procedure employed by the trial judge. Moreover, we reversed in Toliver on the ground that the trial judge’s absence deprived the defendant of his right to a jury trial because it is the trial judge who makes the ultimate determination regarding a prospective juror’s fitness to serve (see Toliver, 89 NY2d at 845).
Here, the questioning concerning the prospective jurors’ fitness to serve had not yet begun when the court brought up the issue of hardship. The trial court’s hardship questioning occurred before formal voir dire (see CPL 270.15), and focused on matters that were extraneous to their fitness to serve and might have led to a prospective juror’s inability to serve because of work commitments and family obligations. To find otherwise, in reliance on CPL 270.15, would be to conflate a prospective juror’s inability to serve because of hardship unrelated to “fitness.”[3]
CPL 270.15 expressly mandates that the trial court direct that the names of at least 12 members of the panel be drawn and called, at which time those members “shall take their *156 places in the jury box and shall be immediately sworn to answer truthfully questions asked them relative to their qualifications to serve as jurors in the action” (CPL 270.15 [1] [a]). We have made it clear that once formal voir dire is commenced, the defendant has a fundamental right to have it overseen by a judge (see Toliver, 89 NY2d at 844).
Contrary to the dissent’s contention that the court’s procedure deviated from CPL 270.15 (1) (a) (dissenting op at 164), formal voir dire had not commenced in this case when the court inquired of the prospective jurors as to whether they had any hardship. The trial court simply asked the prospective jurors— none of whom had their names drawn or were called to the jury box — if they believed that they would be unable to serve because of a hardship. At that point, there had been no inquiry into whether these particular prospective jurors were fit to serve as fair and impartial jurors (see CPL 270.15 [1] [a], [b], [c]; 270.20); rather, the only inquiry by the court was whether, given the length of the trial, any particular hardship would prevent them from serving. Thus, while a defendant possesses a “fundamental right” to have a judge supervise formal voir dire to determine a prospective juror’s fitness to serve (see Toliver, 89 NY2d at 844), a defendant does not possess a “fundamental right” to have a judge oversee whether a prospective juror has issues in his or her life that prevent him or her from sitting. This is evidenced by the fact that both the trial judge and the commissioner of jurors possess the authority to determine whether “attendance for jury service in accordance with the summons would cause undue hardship or extreme inconvenience” to the prospective juror (Judiciary Law § 517 [c]; see 22 NYCRR 128.6-a [granting the commissioner of jurors the discretion to excuse prospective jurors from service and to grant postponements]).
We have acknowledged in a related context that a trial court’s consideration of a prospective juror’s request to be excused, which is made before the commencement of formal voir dire, is not a material stage of the trial proceedings and the defendant’s presence is therefore not required (see People v Velasco, 77 NY2d 469, 473 [1991]). If a defendant’s presence at a trial court’s questioning of a prospective juror to determine hardship does not constitute a material stage of the trial, it follows that the procedure employed by the trial court in this instance did not affect the organization of the court or the mode of proceedings prescribed by law. As such, defendant was required to preserve her objection to the trial court’s procedure.
*157 Nor can it be said that the trial court “delegated” an exclusive judicial function to the clerk. Judiciary Law § 517 (c) grants to the commissioner of jurors or the court, in deciding whether an application for excusal should be granted, the authority to “consider whether the applicant has a mental or physical condition that causes him or her to be incapable of performing jury service or there is any other fact [which] indicates that attendance for jury service in accordance with the summons would cause undue hardship or extreme inconvenience to the applicant.”
Defendant’s right to a trial by jury was not impaired by this procedure. At most, the trial court failed to adhere to a statutory procedural protection; it did not relieve defendant of her obligation to object to the court’s procedure (see Kelly, 5 NY3d at 120; see also People v Casanova, 62 AD3d 88, 92 [1st Dept 2009], lv denied 12 NY3d 852 [2009] [holding that prescreening procedure for hardship did not fall within the mode of proceedings error exception]). Preservation is particularly important in a case like this because the defense, faced with the prospect that certain prospective jurors were claiming that they were unable to serve due to hardship, may very well have made a strategic decision not to challenge the procedure because he did not want to risk having those prospective jurors end up on the jury when it became apparent that they did not wish to serve. If defense counsel had an objection to the procedure employed by the trial court, he should have voiced it so that the court could have corrected any alleged error.
III.
Defendant’s second contention is that the trial court committed reversible error when it precluded her from introducing evidence that she claimed demonstrated that people other than defendant committed the crimes. She sought to introduce testimony from a witness named “LeShay,” who was expected to testify that 10 days prior to the burglary and assault, two men approached her and LeShay. One of the men purportedly told them that “Tone” had beat him up for “kilograms,” and that it must have been the victim who had “set [him] up to be robbed by Tone.”
After the People rested, defense counsel argued that he intended to call LeShay, who would testify that the two men approached defendant and LeShay and said, “look, Tony Mann stole our narcotics, we can’t get at Tony Mann, because Tony *158 Mann [i]s in jail . . . , but we can get at you.” The trial court refused to allow the testimony, finding it to be hearsay, not probative and too speculative to demonstrate that the two men were involved in the attack. The Appellate Division affirmed on those grounds (110 AD3d at 1006).
Before a trial court permits evidence that another party committed the crime for which a defendant is on trial, “the court must balance the probity of the evidence against the prejudicial effect to the People” (People v Schulz, 4 NY3d 521, 528 [2005], citing People v Primo, 96 NY2d 351, 356 [2001]). The admission of such evidence “may not rest on mere suspicion or surmise” (Primo, 96 NY2d at 357). Here, it cannot be said that the trial court abused its discretion in not allowing the proffered testimony.
IV.
Defendant’s final argument is that she was deprived of the effective assistance of counsel because her trial counsel failed to object to the prosecutor’s comments on summation that appealed to gender bias and denigrated defendant’s alibi defense. “In order to sustain a claim of ineffective assistance of counsel, New York courts [must] examine the trial as a whole to determine whether defendant was afforded meaningful representation” (Schulz, 4 NY3d at 530, citing People v Benevento, 91 NY2d 708, 713 [1998]). “So long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met” (People v Baldi, 54 NY2d 137, 147 [1981]).
The Appellate Division majority and dissenting Justice were in agreement that the prosecutor’s remarks concerning defendant’s gender were patently improper, but these observations were made in the context of defendant’s (unpreserved) argument that prosecutorial misconduct deprived her of a fair trial. The dissenting Justice would have reached the issue in the interest of justice (110 AD3d at 1006-1008). Nonetheless, defendant raised her ineffective assistance of counsel claim on direct appeal, and we therefore review it here.
Addressing first defendant’s contention that defense counsel was ineffective by failing to object to the prosecutor’s alleged denigration of defendant’s alibi defense, we note that *159 the court interrupted the prosecutor after he made the allegation that certain defense witnesses had not come forward until the day before. The court explained that defendant had served notice of the alibi defense prior to trial and that the People were not surprised when the alibi witnesses testified on defendant’s behalf. The court explained that defense counsel was not required to mention the alibi witnesses during his opening, and that defendant was not required to present any evidence at trial. The trial court’s curative instruction — which it gave on its own volition — alleviated any prejudice to defendant and conveyed to the jury that alibi witnesses did not come forward at the last minute.
Turning to defendant’s next contention, we conclude that the prosecutor’s appeal to defendant’s gender was inexcusable and irrevelant, particularly since jealousy and rage are emotions shared by both genders. Statements such as “[o]nly a woman would inflict this kind of beating,” “[t]his crime is a woman” and “hell hath no fury as a woman scorned” are simply ridiculous comments since men are equally capable of committing crimes in a jealous rage. We therefore agree with defendant that the remarks were inflammatory and were improper summation.[4] Our decision should not be interpreted as countenancing such summation remarks that appeal to gender stereotypes when objections are raised, and trial courts should reprimand counsel for making such remarks.
That being said, defense counsel’s failure to object during summation did not amount to ineffective assistance of counsel such that a new trial is required. The remarks by the prosecutor were so over the top and ridiculous that defense counsel may very well have made a strategic decision not to object to the inflammatory comments out of a reasonable belief that the jury would be alienated by the prosecutor’s boorish comments. Defense counsel presented an alibi defense, attacked the credibility of the People’s witnesses, sought to introduce third-party culpability evidence (albeit unsuccessfully), and pointed out the lack of forensic evidence tying defendant to the crime. *160 Thus, it cannot be said that defendant did not receive meaningful representation.
Accordingly, the order of the Appellate Division should be affirmed.

. The prosecutor also called into question defendant’s alibi defense by claiming that the defendant made “a desperate attempt” to provide alibi wit *153 nesses at the last minute, but the trial court interjected that the defense had in fact served a notice of alibi prior to trial, such that it was no surprise to the prosecution when the alibi defense was presented at trial.

. In Toliver, defense counsel registered an objection on the record to the fact that the trial judge had absented himself while prospective jurors two through six were orally answering a questionnaire, and also absented himself during the last five minutes of the prosecutor’s voir dire, calling it a “delegation of judicial responsibility” (212 AD2d 346, 347-348 [1st Dept 1995], revel 89 NY2d 843 [1996]).

. In support of its contention that a procedure “similar” to the trial court’s procedure in this case has previously been “struck down” as “improper” (dissenting op at 165), the dissent relies on People v Roblee (70 AD3d 225 [3d Dept 2009]) — a case where the defendant was charged with the assault of his girlfriend. Roblee is distinguishable, however, because the Appellate Division in that case concluded that the trial court’s blanket exclusion of prospective jurors who had been accused or convicted of domestic violence, or any crime, deprived the defendant of his right to have the jury “ ‘selected at random from a fair cross-section of the community’ ” (id. at 228, quoting Judiciary Law § 500). In addition, the defense attorney in Roblee specifically objected to the court’s procedure (see Roblee, 70 AD3d at 229). Finally, the court’s improper procedure in Roblee addressed the prospective jurors’ fitness to serve (see CPL 270.15), as opposed to hardship (see Roblee, 70 AD3d at 229-230).

. The overall thrust of the People’s theory on summation — -that defendant was jealous of the victim’s relationship with Tony Mann and the crime was perpetrated by a jealous person (as opposed to a stranger, which was the defense’s theory) — was entirely proper in light of the People’s evidence. That evidence was that defendant had harassed the victim over the telephone for several months, and that seven months before the incident at issue on this appeal, defendant physically attacked the victim because of the victim’s relationship with Mann.