People v Metellus (2018 NY Slip Op 00312)





People v Metellus


2018 NY Slip Op 00312


Decided on January 17, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 17, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

L. PRISCILLA HALL, J.P.
JEFFREY A. COHEN
BETSY BARROS
LINDA CHRISTOPHER, JJ.


2012-11311
 (Ind. No. 4923/05)

[*1]The People of the State of New York, respondent,
v
Mario Metellus, appellant.


Paul Skip Laisure, New York, NY (Leila Hull of counsel), for appellant, and appellant pro se.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Solomon Neubort of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (William E. Garnett, J.), rendered December 7, 2012, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Matthew J. D'Emic, J.), of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.
ORDERED that the judgment is reversed, on the law, and a new trial is ordered.
The Supreme Court properly denied, without a hearing, the defendant's motion pursuant to CPL 210.20(1)(g) to dismiss the indictment on the ground that he was denied his right to a speedy trial and his due process right to prompt prosecution. A defendant's right to a speedy trial is guaranteed both by the United States Constitution (see US Const 6th, 14th Amends; Klopfer v North Carolina, 386 US 213), and by statute (see CPL 30.20[1]; Civil Rights Law § 12). Moreover, an unjustified delay in prosecution will deprive a defendant of the State constitutional right to due process (see NY Const, art I, § 6; People v Decker, 13 NY3d 12, 14; People v Staley, 41 NY2d 789, 791). However, "a determination made in good faith to delay prosecution for sufficient reasons will not deprive defendant of due process even though there may be some prejudice to defendant" (People v Vernace, 96 NY2d 886, 888; see People v Decker, 13 NY3d at 14). Where there has been extended delay, the People have the burden to establish good cause (see People v Decker, 13 NY3d at 14; People v Singer, 44 NY2d 241, 254).
In determining whether a defendant's constitutional right to a speedy trial has been violated, the Court of Appeals has articulated five factors to be considered: (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charges; (4) any extended period of pretrial incarceration; and (5) any impairment of the defendant's defense (see People v Romeo, 12 NY3d 51, 55; People v Taranovich, 37 NY2d 442, 445; see also Moore v Arizona, 414 US 25, 26; Barker v Wingo, 407 US 514, 533). These factors apply as well to the due process guarantee (see People v Decker, 13 NY3d at 15; People v Vernace, 96 NY2d at 887; People v Staley, 41 NY2d at 792). "In this State, we have never drawn a fine distinction between due process and speedy trial [*2]standards' when dealing with delays in prosecution" (People v Vernace, 96 NY2d at 887, quoting People v Singer, 44 NY2d at 253).
Here, the Supreme Court appropriately balanced the requisite factors in denying the defendant's motion to dismiss the indictment. While there was an extensive delay of 31 months between the commission of the decedent's murder and the indictment, the Supreme Court properly determined that the People met their burden of demonstrating good cause for the delay. The case was largely circumstantial and, thus, the People had a good faith basis to wait until they believed that they had sufficient evidence to arrest the defendant (see People v Decker, 13 NY3d at 14; People v Denis, 276 AD2d 237, 248; People v LaRocca, 172 AD2d 628; cf. Doggett v United States, 505 US 647, 652-653; People v Staley, 41 NY2d at 792). Moreover, the nature of the charge, murder in the second degree, was very serious, the defendant was not incarcerated during the delay period, and he failed to demonstrate prejudice resulting from the delay (see People v Vernace, 96 NY2d at 888; People v Fuller, 57 NY2d 152, 160; People v Taranovich, 37 NY2d at 445-446; People v Bryant, 65 AD2d 333, 337).
The Supreme Court also properly denied, after hearing, that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials, because the statements were voluntarily made after the defendant knowingly, intelligently, and voluntarily waived his Miranda rights (see Miranda v Arizona, 384 US 436; People v Dayton, 66 AD3d 797; People v O'Malley, 282 AD2d 884).
Contrary to the defendant's contention, the Supreme Court imposed a sufficient sanction, an adverse inference charge, on the prosecution for failing to produce the Miranda card used to administer the warnings to the defendant (see People v Martinez, 276 AD2d 645; People v Fullwood, 254 AD2d 431). Furthermore, the People's failure to produce the Miranda card did not constitute a Rosario violation (see People v Rosario, 9 NY2d 286, 289-291). Two detectives credibly testified that the Miranda warnings were preprinted on the Miranda card. Therefore, since the Miranda card was not a prior statement of a prosecution witness (cf. People v Consolazio, 40 NY2d 446, 453), the failure to produce the Miranda card did not constitute a Rosario violation. The defendant's further contention that the People's failure to produce the memo book of one of the detectives constituted a Rosario violation is unpreserved for appellate review (see CPL 470.05[2]) and, in any event, without merit, because the detective's unrebutted testimony was that he took no notes during his interview of the defendant.
We agree with the defendant, however, that reversal is warranted based on the Supreme Court's dismissal of the first jury panel. The court opened jury selection by swearing in a full panel of prospective jurors. The court then stated the charges against the defendant and listed the names of all of the prospective witnesses, asking jurors to indicate if they recognized their names. After the court gave its preliminary instructions and questioned individual jurors about potential hardships, it called 20 people into the jury box. The court asked each of those prospective jurors about his or her background, contacts with the criminal justice system, and hobbies, and then turned the questioning over to the prosecutor. The prosecutor questioned the prospective jurors until the court broke for lunch. After the recess, both defense counsel and the prosecutor notified the court about an interaction between one of the potential jurors and the defendant's brother. The court was told that as people were waiting outside the courtroom to re-enter, one of the potential jurors approached and hugged the defendant's brother. The two chatted briefly until defense counsel interceded and directed them to stop. The two, however, continued to talk until both defense counsel and one of the prosecutors stopped them. During the colloquy on the People's application to dismiss the entire jury panel, the prosecutor maintained that three of the other potential jurors seemed to be looking and commenting on what was going on, while defense counsel maintained that the three potential jurors were actually standing about 10 to 15 feet away, were not privy to the conversation, and were not able to hear it.
The Supreme Court granted the prosecutor's application to dismiss the entire jury panel, concluding that the defendant's brother had potentially tainted the entire panel. Significantly, the court did not first conduct an inquiry of the potential jurors as to what they had seen and as to [*3]whether they could remain impartial. Where, as here, a jury panel is "properly drawn and sworn to answer questions truthfully, there must be legal cause or a peremptory challenge to exclude a [prospective] juror" (People v Thorpe, 223 AD2d 739, 740; see CPL 270.05[2]; People v Collier, 114 AD3d 1136; People v Roblee, 70 AD3d 225). By dismissing the entire jury panel without questioning the ability of the individual prospective jurors to be fair and impartial (cf. People v Wells, 7 NY3d 51, 59-60), the court deprived the defendant of a jury chosen "at random from a fair cross-section of the community" (Judiciary Law § 500; see CPL 270.05[2]; People v Collier, 114 AD3d 1136; People v Roblee, 70 AD3d 225).
Since there must be a new trial, we note that, although the issue is unpreserved for appellate review (see CPL 470.05[2]), the defendant correctly contends that the admission of DNA profiles and reports violated his right of confrontation. "The Sixth Amendment to the United States Constitution guarantees a defendant the right to be confronted with the witnesses against him [or her]'" (People v Brown, 13 NY3d 332, 338, quoting Crawford v Washington, 541 US 36, 53-54). "This provision bars admission of testimonial statements of a witness who did not appear at trial unless he [or she] was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination'" (People v Brown, 13 NY3d at 338, quoting Crawford v Washington, 541 US at 53-54). "Statements that are considered testimonial include affidavits, . . . similar pretrial statements that declarants would reasonably expect to be used prosecutorially . . . [and] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial'" (People v John, 27 NY3d 294, 303, quoting Crawford v Washington, 541 US at 51-52). Here, the DNA profiles and reports produced from the testing of evidence recovered from the decedent's home, including the defendant's clothing, are testimonial, because such profiles and reports "were generated in aid of a police investigation of a particular defendant charged by an accusatory instrument and created for the purpose of substantively proving the guilt of [that] defendant," and because all of the documents in the file of the Office of the Chief Medical Examiner refer to the defendant by name and label him a "suspect" (People v John, 27 NY3d at 308; see People v Austin, 30 NY3d 98). Furthermore, the admission of such evidence violated the defendant's confrontation right, because it was admitted upon the testimony of an analyst who did not perform, witness, or supervise the generation of the defendant's DNA profile, or perform an independent analysis on the raw data (see People v Austin, 30 NY3d at 104-105; People v John, 27 NY3d at 313-315).
The defendant's remaining contentions need not be reached in light of our determination.
HALL, J.P., COHEN, BARROS and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court