Tennant v Lascelle (2018 NY Slip Op 03279)





Tennant v Lascelle


2018 NY Slip Op 03279


Decided on May 4, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 4, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, DEJOSEPH, NEMOYER, AND TROUTMAN, JJ.


540 CA 17-01948

[*1]MICHAEL C. TENNANT, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF ISABELLA SARA TENNANT, A DECEASED INFANT, PLAINTIFF-APPELLANT,
v
SHARON R. LASCELLE AND HENRY C. LASCELLE, DEFENDANTS-RESPONDENTS. 






LIPSITZ GREEN SCIME CAMBRIA LLP, BUFFALO (JOHN A. COLLINS OF COUNSEL), FOR PLAINTIFF-APPELLANT.
LAW OFFICE OF VICTOR M. WRIGHT, ORCHARD PARK (RACHEL A. EMMINGER OF COUNSEL), FOR DEFENDANTS-RESPONDENTS.


 Appeal from an order of the Supreme Court, Niagara County (Daniel Furlong, J.), entered February 10, 2017. The order granted defendants' motion for summary judgment dismissing plaintiff's complaint. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: On the night of August 26, 2015, plaintiff's five-year-old daughter, Isabella Sara Tennant, was entrusted to the care of her great-grandmother, Sharon R. Lascelle (defendant). Around 10:00 p.m., defendant went to bed and allowed Isabella to color with nonparty John Freeman, Jr., a 16-year-old neighbor of defendant and the boyfriend of defendant's granddaughter. Shortly thereafter, while defendant was asleep, Freeman murdered Isabella and stuffed her body in an exterior garbage bin. Freeman confessed the crime to the police, but he could not explain why he spontaneously murdered Isabella.
Plaintiff subsequently commenced the instant action and alleged, inter alia, that his daughter's murder was caused by defendants' negligent supervision on the night in question. Following discovery, Supreme Court granted defendants' motion for summary judgment dismissing the complaint. We now affirm and note, as a preliminary matter, that plaintiff has effectively abandoned on appeal any claim against defendant Henry C. Lascelle (see Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]).
It is well established that " an intervening intentional or criminal act will generally sever the liability of the original tort-feasor' " (Turturro v City of New York, 28 NY3d 469, 484 [2016], quoting Kush v City of Buffalo, 59 NY2d 26, 33 [1983]). "The test to be applied is whether under all the circumstances the chain of events that followed [an allegedly] negligent act or omission was a normal or foreseeable consequence of the situation created by the [alleged] negligence" (Mirand v City of New York, 84 NY2d 44, 50 [1994]). Thus, an intervening criminal act by a third party that is " extraordinary under the circumstances' " or " not foreseeable in the normal course of events' " breaks the causal chain and exonerates the original tortfeasor of liability (Maheshwari v City of New York, 2 NY3d 288, 295 [2004]).
Here, even assuming, arguendo, that defendant was negligent to some extent in supervising Isabella on the night in question, we nevertheless conclude, as a matter of law, that Freeman's intentional murder of Isabella severed the chain of causation and eliminated any liability on defendant's part (see id.). The record contains numerous undisputed facts supporting [*2]that conclusion. Freeman had previously watched Isabella on more than 10 occasions, all without incident, and they had even colored together before. Freeman and Isabella got along well for years before the murder, and defendant never observed any "red flags" or troubling indicia about Freeman generally, or his interactions with Isabella in particular. Defendant was unaware of any mental problems with Freeman. Indeed, there is no suggestion that Freeman had ever exhibited any questionable behavior or tendencies in the past, whether or not known to defendant.
In sum, there is nothing in the record to indicate that a reasonable person could have foreseen the extraordinary, inexplicable, and spontaneous homicidal violence that Freeman unleashed upon Isabella. "While it is true that these issues generally present questions of fact, there must be some foundation upon which the question of foreseeability of harm may be predicated, i.e., at least a minimal showing as to the existence of actual or constructive notice" (Schrader v Board of Educ. of Taconic Hills Cent. Sch. Dist., 249 AD2d 741, 743 [3d Dept 1998], lv denied 92 NY2d 806 [1998]). There was no such minimal showing in this case. Summary judgment to the supervisor—defendant—is therefore appropriate on this record (see Brandy B. v Eden Cent. Sch. Dist., 15 NY3d 297, 302 [2010]; Lillian C. v Administration for Children's Servs., 48 AD3d 316, 317 [1st Dept 2008]; Lisa P. v Attica Cent. Sch. Dist., 27 AD3d 1080, 1080-1082 [4th Dept 2006]; Schrader, 249 AD2d at 742-744; Belinda L.G. v Fresh Air Fund, 183 AD2d 430, 430-431 [1st Dept 1992]; Adolph E. v Linda M., 170 AD2d 1011, 1011-1012 [4th Dept 1991], lv denied 77 NY2d 809 [1991]; but see Mary A. ZZ. v Blasen, 284 AD2d 773, 775 [3d Dept 2001]).
Plaintiff's contrary contentions are unavailing. First, plaintiff's reliance on Phelps v Boy Scouts of Am. (305 AD2d 335 [1st Dept 2003]) is misplaced; in that case, the plaintiffs submitted evidence indicating that the defendant supervisor had notice that older campers were sexually and physically attacking younger campers. Second, defendant never conceded that the murder was a reasonably foreseeable consequence of allowing Freeman to watch Isabella on the night in question; to the contrary, defendant consistently maintained during motion practice that the "foreseeable harm [under the circumstances presented here] does not include the arbitrary, cold-blooded murder by a trusted friend in one's own home." Third, the fact that Isabella's mother had previously voiced vague expressions of disapproval about the occasional presence of neighborhood teenagers in defendant's home does not constitute a basis to foresee later violent conduct by one such teenager (see Brandy B., 15 NY3d at 302-303; Doe v Rohan, 17 AD3d 509, 511-512 [2d Dept 2005], lv denied 6 NY3d 701 [2005]). Fourth, the fact that Freeman might have been "bickering" with his girlfriend in the hours before Isabella arrived at defendant's home does not create a triable issue of fact regarding the foreseeability of Freeman's later homicidal violence against Isabella, who had nothing to do with the "bickering." Fifth and finally, plaintiff's bald assertion that it is inherently foreseeable that a 16-year-old male might injure or kill an unrelated five-year-old female in his care is nothing more than invidious gender stereotyping, which we cannot countenance (see generally People v King, 27 NY3d 147, 170 [2016] [Rivera, J., dissenting]).
Entered: May 4, 2018
Mark W. Bennett
Clerk of the Court