People v Ocampo (2022 NY Slip Op 03803)

People v Ocampo

2022 NY Slip Op 03803

Decided on June 09, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 09, 2022

Before: Kapnick, J.P., Mazzarelli, Gesmer, Shulman, JJ. 

Ind. No. 252/14 Appeal No. 16117 Case No. 2017-339 

[*1]The People of the State of New York, Respondent,
v
Virgilio Ocampo, Also Known as Virgilio Campo, Defendant-Appellant.

Caprice R. Jenerson, Office of the Appellate Defender, New York (Victorien Wu of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Paul A. Andersen of counsel), for respondent.

Judgment, Supreme Court, Bronx County (Margaret L. Clancy, J.), rendered December 8, 2015, as amended January 5, 2016, convicting defendant, after a jury trial, of predatory sexual assault against a child and use of a child in a sexual performance, and sentencing him to an aggregate term of 25 years to life, unanimously affirmed.
There was no improper delegation of judicial authority, or voir dire outside the presence of the court, when, at the court's direction and with the consent of the parties, the court clerk made a preliminary inquiry of a group of prospective jurors. This was for the sole purpose of identifying panelists to be brought into the courtroom for inquiries by the court itself into their fitness to serve. Accordingly, we find no mode of proceedings error exempt from preservation requirements.
Defendant was charged with committing sex crimes against his girlfriend's six-year-old daughter. The evidence included two videos, taken with defendant's phone, showing defendant having sexual intercourse with the child. On the first day of jury selection, to identify and dismiss prospective jurors who could not be fair and impartial in light of the nature of the charges and the graphic evidence, the court addressed the approximately 200 prospective jurors in groups of approximately 50. The court told each group about the charges and described the video evidence. All panelists who stated that they could not be fair and impartial in light of these circumstances were excused.
When jury selection continued two days later, 92 panelists remained. Because of the size of the group, they were placed in an assembly room down the hall from the courtroom and in the courtroom next door. The court informed the parties that some of the remaining panelists had approached court officers, stating that they had "thought about it" and now believed they could not serve as jurors. The court proposed sending the court clerk to each of the rooms where the jurors were waiting "to ask generally the question of since Tuesday is there anybody who in thinking about the judge's questions believe they can't serve on the case." Any prospective jurors who answered in the affirmative would be brought into the courtroom for further questioning by the court. Defense counsel consented to this procedure.
Upon returning to the courtroom, the clerk reported that there were 10 prospective jurors who had "an issue." The 10 panelists were brought to the courtroom, where the court inquired whether, based on "the nature of the case [and] the kind of evidence you will be seeing during the course of this trial," the panelists now thought they could not be fair and impartial. Two of the panelists expressed logistical concerns unrelated to the subject matter of the case, and the court indicated that it would address such matters later. The other eight jurors indicated that, upon further reflection, they could not be fair and impartial. The court excused these jurors and then proceeded [*2]with the balance of jury selection.
Defendant argues that, by directing the clerk to question the prospective jurors about their ability to remain impartial in light of the circumstances, the court effectively absented itself from part of the voir dire proceedings, in violation of his "fundamental right to have a judge preside over and supervise the voir dire proceedings while prospective jurors are being questioned regarding their qualifications" (People v Toliver, 89 NY2d 843, 844 [1996]). He asserts that this was a mode of proceedings error, requiring reversal even though defense counsel consented to the procedure (see People v King, 27 NY3d 147, 153-54 [2016]).
While the clerk's inquiry of the prospective jurors touched on an issue related to juror qualification, we agree with the People that the clerk's inquiry was fundamentally the performance of a ministerial function. The clerk was not called on to dismiss prospective jurors or to evaluate their responses. Instead, the clerk "simply supplied information upon which the court made its own determination" (People v Singletary, 66 AD3d 564, 566 [1st Dept 2009], lv denied 13 NY3d 941 [2010]). Moreover, the information supplied was simply the panelists' responses to the court's preliminary inquiry, as relayed by the clerk. It was the court, not the clerk, that actually inquired into these panelists' fitness to serve.
The court's methodology did not vitiate the judge's position as "the ultimate arbiter of a prospective juror's fitness to serve" (Toliver, 89 NY2d at 845 [citations omitted]). The circumstances here are plainly distinguishable from those in Toliver, in which the trial judge was absent "from portions of the actual voir dire examination of jurors by counsel" (id.).
Rather, the circumstances in this case are similar to those in People v Bartlett (160 AD2d 245 [1st Dept 1990], lv denied 76 NY2d 852 [1990]). Although that case did not involve jury selection, we considered the analogous question of a defendant's right to be present at all material stages of the trial. In Bartlett, the court received a jury note requesting an "interpretation of the charges." The court directed the court officer to return to the jury room and inquire whether the jurors wanted the elements of the crime to be reread. A second note, requesting that the elements of the charged be reread, was submitted to the court several minutes later. This Court held that the defendant's right to be present was not violated because "[i]n ascertaining whether the jury wished the elements of the crimes reread, the court officer was essentially used as a messenger to deliver that question. Upon the jury's request to have the elements reread, the court immediately directed the jury to be returned to the courtroom and in the presence of the defendant gave the jury the requested instruction . . ." (id. at 247). While this Court did not condone the procedure employed by the trial court in Bartlett, and advised against the use of [*3]this method in the future, it found that "there was no delegation of responsibility to the court officer in this case" (id.; see also People v Coles, 249 AD2d 32 [1st Dept 1998], lv denied 92 NY2d 849 [1998]). Like the court officer in Bartlett, the clerk in this case was "merely used as a messenger for the ministerial act of delivering the Judge's inquiry to the jury, which did not amount to an improper delegation of supervisory authority" (Bartlett, 160 AD2d at 247).
We perceive no basis for reducing the sentence.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 9, 2022